ISAAC BROWN, APPELLANT, *v.* JOSEPH P. SHANNON ET AL.

Where a bill is filed to enforce the specific execution of a contract in relation to the use of a patent right, this court has no appellate jurisdiction, unless the matter in controversy exceeds two thousand dollars.

The jurisdiction, where the bill is founded upon a contract, differs materially from the jurisdiction on a bill to prevent the infringement of the monopoly of the patentee, or of those claiming under him by legal assignments, and to protect them in their rights to the exclusive use.

The penalty of the bond taken, when an injun~~~ is awarded, is no evidence of the amount or value in dispute.

THIS was an appeal from the Circuit Court of the United States for the district of Maryland.

The case is stated in the opinion of the court.

It was argued by *Mr. Schley* for the appellant, and submitted on a printed argument by *Mr. Latrobe* and *Mr. Gwinn* for the defendants.

Mr. Chief Justice TANEY delivered the opinion of the court.

This is an appeal from the decree of the Circuit Court for the district of Maryland.

The bill was filed by Joseph P. Shannon & Company, Gelston & Matthews, Lapouraille & Maughlin, and Griffiss & Cate, who composed four different partnership firms in the city of Baltimore, separately engaged in the business of planing, who all joined in the bill of complaint against Brown, the appellant, praying that he might be enjoined from the use of certain planing machines, mentioned in the bill, in the city of Baltimore. Upon the hearing, a perpetual injunction was granted accordingly; and from that decree this appeal was taken.

From the manner in which the bill is framed, there is some.

difficulty in determining whether the complainants are seeking the aid of this court to prohibit the infringement of a patent right assigned to them, or to enforce the specific execution of two contracts with the appellant, exhibited with the bill; for the right claimed under the patent, and the right claimed under the contracts, are so mingled together in the statements and allegations of the complainants as to leave some doubt upon that point. And the first question, therefore, for this court to determine, is, upon which of these two grounds does the bill seek for relief? The jurisdiction of the Circuit Court in the one case is materially different from its jurisdiction in the other; and, while this court can exercise no appellate power in a case arising under contracts like those exhibited, unless the amount or value of the matter in controversy exceeds two thousand dollars, it may yet lawfully exercise its appellate jurisdiction when a far less amount is in dispute, if the party is proceeding either at law or in equity for the infringement of a patent right to which he claims to be entitled. Upon looking, however, carefully into the bill, we think it must be regarded and treated as a proceeding to enforce the specific execution of the contracts referred to, and not as one to protect the complainants in the exclusive enjoyment of a patent right. It states that three of the partnership firms named as complainants—that is to say, Joseph P. Shannon & Company, Gelston & Matthews, and Lapouraille & Maughlin—were, by regular assignments, entitled to the exclusive use of Woodworth's planing machine in the State of Maryland, east of the Blue Ridge. That the appellant had used these machines in the city of Baltimore, without any right derived from the patentee, and that, in consequence of this infringement of their rights, various suits and controversies had taken place between them and Brown, who claimed the right to use the machines in question, as the assignee of a patent of Emmons. The bill then proceeds to state that, in order to put an end to these controversies and suits, these appellees, and the appellant, entered into the contract of the 19th of January, 1853, which is exhibited with the bill.

By this contract, the portion of the appellees of which we are now speaking, and the appellant, agreed that each of the said three partnership firms and the appellant should have the right to use the Woodworth patent at one establishment, anywhere within the territorial limits above mentioned, not exceeding five machines at such establishment; and that each of the said parties should also have the right to use Emmons's patent.

There are other stipulations in this agreement which it is not material to state for the purposes of this opinion.

The bill further states that Brown afterwards, on the 15th of June, 1853, assigned to Griffiss & Cate, the other complainant, all his right to use the Woodworth patent, which right he had derived from the contract before mentioned; and also the right to use the Emmons patent, the right to which he had derived from the administrator of Emmons. This contract states that the assignment was made in consideration of fifteen hundred dollars, paid the appellant by Griffiss & Cate. And the complainants allege that, after this assignment, Brown continued to use the said five machines in his establishment in Baltimore, although he had no right to do so, as they were all Woodworth's planing machines; and that he is not only a wrong-doer in using a patented invention without a license, and as such liable to be restrained by a court of equity, but that such use is a fraud upon the parties to each of the two contracts into which he had entered, as above stated. That the object of the contract of January 19, 1853, was to restrain the use of the Woodworth machine and the Emmons machine, so far as that right was to be used, to four establishments in the city of Baltimore, with the limited number of machines in each; and that the use of them by Brown, after he had substituted Griffiss & Cate in his place, was a fraud upon this contract, from the binding operation of which he could not withdraw himself, and a fraud also upon his contract with Griffiss & Cate. And the gravamen of the bill, and the ground upon which relief is sought, is summed up in the paragraph immediately preceding the prayer for relief, in the following words:

"And your orators are further advised, that the misconduct of the said Brown in the premises is a fraud upon the parties to the agreement of the 19th of January, 1853, as well as upon the parties to the agreement of the 15th of June, 1853, which it is the peculiar province of a court of equity to restrain."

It is to prevent the fraudulent violation of these contracts, therefore, that the complainants seek the aid of the court, and ask for an injunction; and it being a proceeding founded on a contract between the parties, this court has no appellate power, unless the matter in controversy is of the value of more than two thousand dollars. Now, the matter in controversy is the right of the appellants to use these five machines while the Woodworth patent continued—that is, until the 29th of December, 1856.

But it appears by the record that Brown sold this right to

Griffiss & Cate for $1,500. He admits, in his answer, that he sold and assigned it for that sum; nor does he suggest that it was worth more. The establishment of Griffiss & Cate, like that of the appellant, was in the city of Baltimore. And if $1,500 was the just value of the right in controversy on the 15th of June, 1853, there is no reason for supposing that it was more on the 10th of October in that year, when this bill was filed, or at any time since; on the contrary, the period for the duration of the right under the contract was daily diminishing as the termination of the patent was approaching, and a diminution on the value of the right would be a natural and necessary consequence. It is evident, therefore, that the value of the matter in controversy is not sufficient to give appellate jurisdiction to this court.

It has, however, been suggested in the argument at the bar, that the value may be estimated by referring to the penalty of the bond taken by the Circuit Court when the injunction was granted. But this rule would be entirely too vague and uncertain for judicial purposes. It is the practice of all courts, in taking bonds of this description, to prescribe a penalty more than enough to cover all possible damages which the respondent may sustain by reason of the injunction. There was nothing before the Circuit Court when the penalty in this case was prescribed, but the bill of the complainants. And although the bill disclosed a controversy where the matter in dispute was worth in the market but $1,500; yet, when the answer came in, and testimony was taken, it might show that the matter in dispute was of far greater value. The court could not foresee whether this would be the case or not, and hence the necessity and propriety of prescribing a penalty that would cover all possible contingencies. The respondent, however, as we have said, admits that he sold the privilege now in dispute for the sum mentioned in the bill, and does not say that it was worth more, or was of greater value in his hands than in those of Griffiss & Cate. The sum mentioned in the bill, and for which the privilege in question was sold by the appellant, must therefore be taken as the true value of the matter in controversy; and being less than $2,000; whatever errors may be apparent in the proceedings and decree of the court below, we have yet no power under the act of Congress to revise and correct them, and the appeal must be dismissed for want of jurisdiction in this court.