## DENSMORE *v.* THREE RIVERS MANUF'G CO.

(*Circuit Court, W. D. Michigan, S. D.* May 21, 1889.)

PATENTS FOR INVENTIONS—CONSTRUCTION OF LICENSE—JURISDICTION.
  The circuit court of the United States has no jurisdiction of a suit by the assignee of a patent against the licensee of his assignor, for infringement, where the preliminary questions to be determined are—*First,* the construction of the contract licensing defendant; *second,* whether the terms of the contract have been complied with by defendant; *third,* if they have not, whether the non-compliance has worked a forfeiture of the contract, so that complainant can enforce his rights as owner of the patent, instead of those arising to him as licensor, by virtue of the assignment of the contract to him by the original licensor. Such preliminary questions do not arise under the patent laws. and the court has no jurisdiction, both parties being citizens of the same state.

In Equity. On final hearing.
*Taggart & Denison,* for complainant.
*Dallas Boudeman,* for defendant.

JACKSON, J. The complainant, as assignee of letters patent No. 146,-632, issued November 6, 1873, to James Allen, for certain improvements in lath machines or mills, brings this suit against defendant as an alleged infringer of said patent, seeking to restrain said defendant from

further infringement, and for an account of profits. It appears on the face of the bill that both complainant and defendant are citizens of the state of Michigan. At the threshold of the case there is presented a preliminary question which affects the jurisdiction of the court to hear and determine the matters involved in the controversy. The bill alleges, and the answer admits, that on the 21st day of March, 1874, said James Allen and John W. Kelsey, being then the owners of said patent, made and entered into a written contract with defendant in respect to said letters patent as follows, viz.:

"This agreement, made this 21st day of March, 1874, between J. Allen and J. Kelsey, parties of the first part, and the Three Rivers Manufacturing Co., of the second part, as follows: J. Allen and J. Kelsey, of the first part, agree to let the Three Rivers Manufacturing Co., of the second part, have the sole right to manufacture Allen's Patent Gauge Lath-Mill, patented January 20th, 1874, on royalty. The Three Rivers Manufacturing Co., of the second part, they agreeing to pay J. Allen and J. Kelsey, parties of the first part, or their assigns, $30.00 on each gauge lath-mill of Allen's patent, sold. A record of each and all sales of such machine shall be kept by the parties of the second part, and a sworn statement by the secretary of the Three Rivers Manufacturing Co. shall be made to the parties of the first part on the first day of each month. It is also further agreed by the parties of the first part that they will pay the parties of the second part $150.00 for each gauge lath-mill sold by them or their agents, upon the delivery of the same on board of the cars in Three Rivers, Michigan, billed as they shall order; and the parties of the second part agree to make and have on hand the gauge lath-mills, to fill all orders that the parties of the first part, or their authorized agents, shall give; and the parties of the first part agree to give the Three Rivers Manufacturing Co., parties of the second part, all the orders that they, J. Allen and J. Kelsey, parties of the first part, or their authorized agents, shall receive for said Allen's Gauge Lath-Mill for the term of three years."

This contract was transferred and assigned by said Allen and Kelsey to complainant in June, 1874, at or about the time complainant acquired the title to the letters patent, and he and the defendant thereafter recognized its existence, and acted under it for many years, their transactions and dealings creating mutual debts and liabilities. After setting out said contract and its assignment to complainant, the bill alleges that the defendant "never fulfilled its part of said contract, and never made the statement under oath, as provided in said contract, and never paid over any royalty to said James Allen, nor to said John W. Kelsey, nor to your orator; that said defendant has forfeited all rights and privileges under said contract by refusing and by neglecting to fulfill its part of said agreement, and prior to the commencement of this suit has been notified to desist from and cease the manufacture and sale of said machines, so as aforesaid patented." The defendant, in its answer, denies that it did not fulfill its part of said contract; denies that it is, or ever has been, in default on it in any way; denies that it did not pay to said Allen and Kelsey all royalties due them; and alleges that since said contract was assigned to complainant, the latter has been, and still is, indebted to it on account of their dealings and transactions in and about said lath-mills, etc. Said contract, upon its face, makes no provision for its forfeiture

in any event, or for any cause. If it is still in force as an operative contract between the parties, it is clear that complainant cannot maintain a suit for infringement against defendant. Complainant has attempted to show by parol testimony that said contract was intended to be operative only for the period of three years. The second paragraph of the contract, which stipulates that Allen and Kelsey will pay the defendant $150 for each lath-mill furnished them, and that defendant will make and keep on hand such mills to fill all orders that said Allen and Kelsey, or their authorized agents, may give for the same, fixes the period of three years as the duration or limit of this part or feature of the agreement. But this second paragraph contains a distinct, separate, and independent agreement from that provided for in the first clause of the contract. It embodies a "further" agreement than that set out in the first paragraph relating to the royalty to be paid by defendant on all the lath-mills manufactured and sold by it. In respect to the agreement embodied in the first branch of the contract, no period is fixed for its duration or termination, nor is any provision made for its forfeiture. As forfeitures are not favored, especially in courts of equity, the right to declare or treat such a contract as forfeited will not be readily or lightly implied. It will not arise from mere failure to pay over the stipulated royalties, or to make the monthly statements provided for in the contract. But if the right existed on the part of complainant to have said contract forfeited because of defendant's non-compliance with its terms respecting the payment of royalties and the making of monthly statements, as stipulated, such non-compliance on defendant's part is disputed, and directly put in issue by the answer.

Now, the parties plaintiff and defendant, being citizens of Michigan, cannot litigate in this court the question whether said contract has or has not been performed or fulfilled, nor whether it is or should be forfeited, nor what construction should properly be placed upon its terms and provisions. These and similar matters arising under or involved in said contract are not questions arising under the patent laws of the United States, over which this court has jurisdiction irrespective of the citizenship of the parties to the suit. In order to reach the questions connected with the validity of the patent sued on, and of its infringement by the defendant, this court is asked and required to pass—*First*, upon the construction of said contract of March 21, 1874; *secondly*, to determine whether its terms and provisions have been fulfilled and performed by the defendant; and, *thirdly*, if they have not, whether such non-compliance therewith has worked a forfeiture of said contract, so that complainant may assert and enforce his rights and remedies, as patentee or owner of the patent, instead of those arising to him as licensor under the contract assigned to him by Allen and Kelsey. We think it settled by the authorities that these preliminary questions are not such as arise under the patent laws, and that this court has no jurisdiction to hear and determine the same because of the citizenship of the parties to this suit, both sides being citizens of the state of Michigan. *Wilson v. Sandford,* 10 How. 99; *Brown* v. *Shannon,* 20 How. 56; *Hartell* v.

*Tilghman,* 99 U. S. 547–556; *Albright* v. *Teas,* 106 U. S. 618, 619, 620, 1 Sup..Ct. Rep. 550.    These cases hold that suits brought to enforce contracts between parties pertaining to patent-rights, are not actions arising under the patent laws of the United States, and are not, therefore, cognizable in the federal courts irrespective of the citizenship of the parties; and further, that suits to set aside such contracts, or to terminate them, fall within the same rule.    In the present case the complainant sets up a patent-right, which he claims defendant has infringed.    He alleges that his assignor and the defendant, before the acquisition of his exclusive right to said patent, had entered into a written contract, which is made an exhibit to the bill, under and by virtue of which the defendant was authorized and licensed solely to manufacture and sell. the patented machine indefinitely, both as to time and territory, upon the payment of a fixed royalty upon each machine manufactured and sold. This contract is sought to be set aside for alleged breaches thereof by defendant, in order that complainant may then or thereafter have considered and determined the question whether defendant, with said contract out of the way, or declared forfeited,' is an infringer of said patent. Defendant, while denying the validity of the patent and its infringement thereof, sets up its performance of said contract, and denies complainant's right to have it terminated or declared forfeited.    Under these circumstances, the case falls directly within the principle of the cases of *Wilson* v. *Sandford,* 10 How. 101, and *Hartell* v. *Tilghman,* 99 U. S. 547. The questions growing out of said contract, as presented by the pleadings, necessarily precede, and must be first settled and determined by the court, before the questions or controversy as to the validity of the patent or of its alleged infringement by defendant can be reached and considered.    Of these preliminary questions presented by the bill this court cannot take jurisdiction, because both complainant and defendant are citizens of Michigan.    It follows that the suit should be dismissed for want of jurisdiction in this court to hear and determine the matters which precede the questions arising under the patent laws.    Aside from this question of jurisdiction, the court is clearly of the opinion that upon the merits of the case the bill should be dismissed on the ground that the alleged infringement by defendant is not established by the evidence. But, without disposing of the case on this ground, which would involve the assertion of jurisdiction, the bill, for the reason above stated, will be dismissed, without prejudice, for want of jurisdiction..