MARSH *v.* NICHOLS, SHEPARD & CO.

ERROR TO THE CIRCUIT COURT OF CALHOUN COUNTY, STATE OF
MICHIGAN.

No. 136.   Argued January 6, 1891. — Decided May 11, 1891.

A bill in equity in a state court, with jurisdiction over the parties, brought
to enforce the specific performance of a contract whereby an inventor
who, having taken out letters patent for his invention, agreed to transfer
an interest therein to the plaintiff; and proceedings thereunder involving
no question arising under the patent laws of the United States, and not
questioning the validity of the patent, or considering its construction,
or the patentability of the device, relate to subjects within the juris-
diction of that court; and its decree thereon raises no Federal question
for consideration here.

IN 1880, Elon A. Marsh had devised and applied for a patent
upon a valve gear for steam engines; and Nichols, Shepard &
Co., which is a corporation of the State of Michigan, contended
in this action, as hereafter set forth, that in that year, while
his application was pending in the Patent Office, Marsh agreed
with Nichols, an officer of the corporation, that Nichols was
to do certain things in exploiting the invention, in return for
which Marsh was to allow a shop right to the use of it, and
that Nichols performed his part of the agreement.   Marsh
assigned an interest in the patent, before it issued, to Minard
La Fever, and they assigned an interest to one Scott.   All the
parties were citizens of Michigan.

December 25, 1880, the patent issued, No. 236,052, but
through an oversight it was not then signed by the Secretary
of the Interior.   February 11, 1881, Nichols, Shepard & Co.
was notified of the issue of the patent, and a demand made
upon it to sign a license and pay a royalty if it desired to con-
tinue the use of the invention.   June 9, 1881, Marsh, La Fever
and Scott filed their bill against Nichols, Shepard & Co. in the
Circuit Court of the United States for the Eastern District of
Michigan; alleging the issue of the patent and title in com-
plainants; that they had granted a large number of licenses
for the use of the invention; and that the public, with the

exception of Nichols, Shepard & Co., had acquiesced in complainants' rights; and charging infringement of the letters patent " without the license or allowance and against the will of your orators and in violation of their rights."

The defendant answered, denying that Marsh was the first and original inventor of the improvement described in the letters patent; and asserting that, in the specific form described, it was of little or no value, and had been long known to the general public; that defendant had instructed one of its workmen to overcome a defect in it, which had been done, and had procured the improvement to be patented, and was making use of the same, though not in large quantities; and set up various alleged anticipating patents.

During the progress of this suit, it appeared that the supposed patent had not been signed by the Secretary of the Interior, and the Circuit Court on final hearing, March 5, 1883, held that, for that reason, the patent was a nullity, though the omission of the signature of the Secretary was accidental. The patent had been signed pending the suit, February 24, 1882, but whether it was validated from that time was not decided. *Marsh* v. *Nichols*, 15 Fed. Rep. 914. A decree was accordingly entered, April 16, 1883, dismissing the bill. From this decree Marsh and La Fever prosecuted an appeal to this court on February 26, 1885, and Nichols, Shepard & Co. a cross-appeal on March 11, 1885. The case was heard here November 9, 1888, decided December 10, 1888, the cross-appeal dismissed, and the decree of the Circuit Court affirmed. *Marsh* v. *Nichols*, 128 U. S. 605.

On the 23d of April, 1883, Marsh, La Fever and Scott filed a second bill of complaint in the same court, to which Nichols, Shepard & Co. pleaded the former decree in bar, and on April 8, 1884, complainants dismissed the bill.

On November 25, 1884, a second patent, No. 308,567, was issued relative to the same invention. March 21, 1885, Marsh and La Fever filed a bill in the Circuit Court of the United States for the Eastern District of Michigan against Nichols, Shepard & Co., counting on the patents of 1880 and 1884, and alleging infringement of both.

Prior to this and on April 16, 1884, Nichols, Shepard & Co. filed its bill in the Circuit Court for the County of Calhoun, Michigan, against Marsh, La Fever and Scott, which in substance alleged that it was a corporation doing business in said county; that it was building a certain class of engines, called traction engines, upon which a reverse gear was desirable, and many devices therefor had been invented; that one of the defendants, Marsh, claimed to have made an invention for a reverse gear, for which he had applied for a patent, and that in the spring and early summer of 1880, he (Marsh) applied to the treasurer of said company, and exhibited to him this device; that Marsh was desirous of introducing his device, and that after some negotiations a contract was made whereby the complainant, for certain outlays of labor and money and other consideration, was, if the device proved successful in actual use, thereafter to have the right to use the device on any steam engine made by it, or under its direction, without any further claim by Marsh against it, and that the agreement was carried out by the complainant; that said Marsh, having claimed to have obtained a patent thereon, had assigned one-half of the same to Minard La Fever, and that thereafter the two had assigned one-third interest to James Scott, and that Marsh and La Fever and Scott, claiming that the agreement did not secure Nichols, Shepard & Co. the rights hereinbefore stated, had previously filed their bill in the Circuit Court of the United States for the Eastern District of Michigan, in equity, praying for an injunction to restrain complainant from manufacturing, using or selling said invention as secured by the letters patent; that complainant had answered the bill, and denied the validity of the patent; that considerable testimony was taken thereon showing the prior state of the art; that it appeared therein that the paper which the defendants claimed as a patent was not valid as such, and was not signed by the Secretary of the Interior at the time said suit was begun, but had been signed subsequently thereto, and that the Circuit Court of the United States for the Eastern District of Michigan, in equity, had entered a final decree in said cause dismissing said bill of complaint. Com-

plainant also charged that defendants had caused to be introduced into the Congress of the United States bills granting them a patent, but that no such bills had become laws, "and that said defendants have no valid patent, and have no right to prevent any person whatsoever from manufacturing said device. Nevertheless, the said defendants represent to the public that they have secured letters patent upon said device and threaten to bring suits against this complainant and those persons purchasing from it, and they further affirm that this complainant has no right under and by virtue of the said agreement between it and said Marsh to manufacture, use or vend said device, and they thereby injure and harass complainant, and their said action, in so claiming to hold such patent as aforesaid, and in claiming that complainant has no right under and by said agreement, prevents persons desiring engines of the class manufactured by complainant from purchasing the same of complainant; that defendants' claim to the exclusive right to said device is wholly without foundation, and, even should the pending application for a patent be granted, (now pending in the shape of bills before the Houses of Congress,) complainant would still be entitled to manufacture and vend the same, and would be entitled to the protection and aid of this court to compel said defendants to carry out and perform the said contract and refrain from interfering with the acts of complainant done in pursuance of said contract; and that until such patents shall have been granted complainant is entitled to the protection of this court to prevent and restrain said defendants from falsely and maliciously representing that complainant is violating rights secured to them by patent right, and from falsely and maliciously representing that complainant did not in good faith enter into a contract with said Marsh, by which it became entitled to employ said device on all engines thereafter manufactured by it, even though said Marsh should procure a patent and become entitled to protection in the exclusive use of said device as against all other persons."

Plaintiff thereupon prayed for answer, but not on oath, answer under oath being expressly waived; that defendants

might, be ordered to refrain and desist from asserting that complainant had not the full and complete right to make, use, vend or put into practice or operation and use on any engine made, sold, used or operated by it, the said device, in the same form or style, or substantially the same form or style, as that exhibited on an engine made in 1880, at the time of its agreement with Elon A. Marsh; that defendants might be ordered to desist and refrain from publishing or asserting that it has any right to the exclusion of this complainant in and to the said device; that defendants might be ordered and decreed to specifically carry out the said original contract made between complainant and Elon A. Marsh, by which complainant was to be permitted, if defendant Marsh should obtain a patent, on said device, to use, vend and employ said device on any or all engines made at defendant's shop without molestation or interference on the part of said Marsh, or any one who may have become interested with him in the device or the patent thereafter to be procured therefor; that an injunction might be issued to Elon A. Marsh, Minard La Fever and James Scott, directing them to abstain from interfering with complainant's use of said device at the present time, or in the future, if a patent should hereafter be granted to them; for process and general relief.

Defendants filed their answer admitting the invention and the application for a patent; that complainant was a corporation engaged in business as alleged, and that Marsh desired to place one of said devices on an engine to demonstrate its superiority; but denied each and every allegation that any contract for license was ever made, and alleged that Nichols, Shepard & Co. refused to make such contract at that time, and subsequently notified defendants that it would use the invention regardless of any rights they might have by virtue of any patent. Defendants admitted that they claimed a valid patent, and averred that complainant had no rights against it; admitted the litigation in the United States Circuit Court, and alleged that the defence therein interposed by Nichols, Shepard & Co. was the lack of novelty of the invention, and that the company did not allege any defence on the

ground of license; and that the claim of Nichols, Shepard & Co. of a license was not set up and alleged for a long period nor until after that cause had been brought.

June 22, 1885, defendants filed a supplemental answer, alleging as to the proceedings in the Circuit Court as follows:

"And these defendants, for further answer, say that the cause heretofore mentioned in their answer having been heard in the Circuit Court of the United States for the Eastern District of Michigan, in equity, between these defendants and James Scott as complainants, and the said Nichols, Shepard & Co., in which a decree was entered against these defendants, has been by the defendants herein duly appealed to the Supreme Court of the United States, and that the said court has, according to the rules of practice in such case, allowed said appeal, and that thereby all of the questions involved in the decision of said cause, including the validity of the letters patent on which the same was founded, are now pending the decision of the Supreme Court of the United States; and they further say that the defendant in the said cause, Nichols, Shepard & Co., has also filed its claim of appeal in said cause to the said Supreme Court of the United States, in the Circuit Court of the United States for the Eastern District of Michigan, in equity, which said appeal has been allowed by the said Circuit Court."

Defendants also alleged the pendency of another suit brought in equity by them in the said Circuit Court on the same and another patent. They also demurred for want of equity. Defendant Scott answered that he had no interest in the matter. When the cause came on for hearing, counsel for defendants objected to the jurisdiction of the court on the ground that the bill and answer raised the question of the validity of certain letters patent of the United States, over which the court had no jurisdiction, but the objection was overruled. A certified copy of the record of the proceedings in the United States Circuit Court, including the allowance of the appeals by both parties to the Supreme Court, and the letters patent Nos. 236,052 and 308,567, were introduced in evidence among other things. And also the proceedings on an

interference declared in 1882 between an application of Marsh, September 28, 1881, and a reissued patent to Hoag, who was Nichols, Shepard & Company's superintendent, of November 27, 1881, for improvement in reversing gear for steam engines, and finally determined September 5, 1884, in Marsh's favor.

On the 14th of September, 1885, the Calhoun Circuit Court filed its findings, and on October 31, 1885, entered its decree as follows: That "the said court now here finds that the said defendant Marsh, in the month of September, 1880, entered into a contract with the said complainant, by the terms of which contract complainant was to be permitted thereafter to use, without claim on the part of said Marsh, on steam engines manufactured by it, a certain invention relating to the valve gear, which was thereafter, pursuant thereto, placed under the superintendence of Marsh, upon an engine then in the yards of the complainant, which was thereafter sent for exhibition to the state fairs of both Illinois and Missouri.

"And the court further finds that defendants La Fever and Scott, as assigns of said Marsh, have become interested in said invention since said contract was entered into, but that the rights of complainant under said contract, according to its tenor and effect, are superior and paramount to the rights of said La Fever and Scott.

"And the court further finds that by the terms of the said contract complainant was to do and perform in and about the said device certain things and conditions, all of which have been done and performed by it; but that, on the contrary, the said Marsh (and his assigns, the other defendants) have not carried out and performed the same, in that they have denied the existence of said contract and asserted rights and interfered with and molested the complainant in the prosecution of its business, contrary to the tenor and effect of the said contract.

"And therefore the court doth now order, adjudge and decree that the said contract ought to be carried out and performed on the part of the said defendants, and doth order and decree that the said defendants, Elon A. Marsh, Minard La Fever and James Scott, do refrain and desist from asserting that complainants have not the full and complete right to make,

use, vend and put into practice or operation the said invention substantially in the same form and style as that exhibited on the said engine made in 1880, about the time of the making of said agreement and according to its terms.

"It is further ordered, adjudged and decreed that the said defendants do desist and refrain from publishing or asserting, contrary to the terms of said contract, that they have any right to the exclusion of said complainant in and to the said device.

"It is further ordered, adjudged and decreed that the said contract made between complainant and Elon A. Marsh, by the tenor and effect of which complainant was to be permitted to use, vend and employ said device on all the engines made by the complainant without molestation or interference on the part of said Marsh or his assigns, by them and each of them be specifically carried out and performed.

"It is further ordered and decreed, therefore, that the writ of injunction of this court may issue to the said Elon A. Marsh, Minard La Fever and James Scott, directing them to abstain, and perpetually enjoining them and each of them, from in anywise interfering with complainant's manufacture, sale and use of said device according to the terms of said contract."

Thereupon the defendants appealed to the Supreme Court of the State of Michigan, and that court on June 10, 1886, affirmed the decree of the court below, with costs. A motion for a rehearing having been made, the Supreme Court, July 21, 1886, entered a further order, in the following terms:

"This cause having been heretofore brought to this court by appeal from the Circuit Court for the county of Calhoun, in chancery, and the decree of the Circuit Court for the county of Calhoun, in chancery, having been heretofore affirmed, and a motion having been made for a rehearing, and this court having further considered the same, it is now here further ordered, adjudged and decreed that such rehearing be denied, but that the decree be amended so that the defendants shall make, execute and deliver to the said complainant, within forty days after the entry of this order in the Circuit Court

for the county of Calhoun, a release releasing the said complainant, Nichols, Shepard & Company, from all claim, right or demand on the part of them, the said Elon A. Marsh, Minard La Fever and James Scott, by reason of the manufacture, use or sale heretofore of the said invention relating to valve gear in the form and style as exhibited on the said engine described in the decree in this cause, and also releasing the said Nichols, Shepard & Company from all claims, rights or demands on behalf of them, the said Elon A. Marsh, Minard La Fever and James Scott, arising from their making, using or vending the said device hereafter. It is further ordered, adjudged and decreed that this order be remitted to the Circuit Court for the county of Calhoun, in chancery, and be there made a decree of said cause in that court."

The record having gone down, the Calhoun Circuit Court entered the following decree :

"This cause having been heretofore taken by appeal to the Supreme Court, and the decree heretofore rendered in this court having been affirmed and amended in the Supreme Court, and the cause having been remitted to this court with an order directing the said amendment be entered by this court as a decree of this court, it is now here, in pursuance of the said order of the Supreme Court, ordered, adjudged and decreed that the said defendants make, execute and deliver to the complainant, within forty days after the entry of this order, a release releasing the said complainant, Nichols, Shepard & Co., from all claim, right or demand on the part of them, the said Elon A. Marsh, Minard La Fever, and James Scott, by reason of the manufacture, use or sale heretofore of the said invention relating to valve gear in the form and style as exhibited on the said engine described in the decree in this cause, and also releasing the said Nichols, Shepard & Co. from all claims, rights or demands on behalf of them, the said Elon A. Marsh, Minard La Fever and James Scott, arising from their making, using or vending the said device hereafter."

A writ of error was then sued out from this court, the following errors being assigned in the petition for the writ: :

"(1.) That it appears therein that the exclusive jurisdiction

of the Supreme Court of the United States, on the appeal by these defendants, over the same question and the same parties, was drawn in question and was denied.

"(2.) That full faith and credit, at the request of these defendants, was not given to the proceedings, record and appeal appearing in the Circuit Court of the United States for the Eastern District of Michigan concerning the same issues and between the same parties.

"(3.) That the right and authority under the Constitution and laws of the United States of the defendants to prosecute their said appeal from the said Circuit Court of the United States was drawn in question and denied.

"(4.) That the right and authority under the Constitution and laws of the United States authorizing the issue of letters patent to inventors, and especially the right and authority exercised by said defendants under letters patent No. 236,052, issued in pursuance of said laws, was drawn in question and denied."

The opinion of the Supreme Court of Michigan will be found reported in 61 Mich. 509.

*Mr. Don M. Dickinson* for plaintiffs in error. *Mr. R. A. Parker* was with him on the brief.

*Mr. Charles F. Benton* for defendant in error.

Mr. Chief Justice Fuller, after stating the case, delivered the opinion of the court.

The bill was filed in the Circuit Court of Calhoun County for the specific performance by defendants below, of an alleged contract between Marsh and the plaintiff below, by which the latter was to be permitted, if Marsh obtained a patent on the improvement in question, to make, use, vend and employ said device on any or all engines made at its shops without molestation or interference, and to restrain the defendants below from asserting that plaintiff did not have the full and complete right to make, use, sell or operate the device, or that they had any right in the device to the exclusion of plaintiff;

and the decree granted 'the relief accordingly, which decree was subsequently amended by the Supreme Court of Michigan so as to require the defendants below to make, execute and deliver to plaintiff a release from all claim, right or demand on their part, by reason of the manufacture, use or sale of the said invention by the plaintiff theretofore or thereafter.

The Supreme Court held that the agreement set up by the plaintiff was convincingly established by the evidence; and that the suit not being brought to determine any question arising under the patent laws, but merely to enforce a contract to transfer an inventor's right, was not one in which the courts of the United States had particular jurisdiction; that the bill filed in the United States Circuit Court, March 21, 1885, being later than the one in hand, needed not to be considered; that as to the bill filed June 9, 1881, in the United States Circuit Court, and which had been dismissed before this suit was brought, but was afterwards taken to this court on appeal, which appeal was then pending, there was nothing in it to prevent the maintenance of this suit, since it was strictly a bill under the patent laws and nothing else, while this bill could not have been filed in that court between these parties, who were citizens of Michigan, and it was very questionable whether it could have been framed as a proper cross-bill in that case; and the court further held that the plaintiff was not estopped by that litigation, for if the defendants had not a good patent, plaintiff was not called upon to put in any defence which admitted one, and could not be deprived of the right to vindicate in another suit such right as could not have been adequately enforced in that litigation.

It is settled that in order to justify a writ of error from this court to review the judgment of a state court, the record must show that the judgment rested upon the disposition of a Federal question.

In this case the state court did not decide any question arising under the patent laws, nor did the judgment require, to sustain it, any such decision. Neither the validity of the patent, nor its construction, nor the patentability of the device, was brought under consideration, even collaterally.

In the language of Mr. Chief Justice Taney, *Wilson* v. *Sandford*, 10 How. 99, 101, the dispute "does not arise under any act of Congress; nor does the decision depend upon the construction of any law in relation to patents. It arises out of the contract stated in the bill; and there is no act of Congress providing for or regulating contracts of this kind. The rights of the parties depend altogether upon common law and equity principles."

Under such circumstances the correctness of a decision of the highest court of a State upon the merits, based upon the existence and effect of an agreement such as that set up in this case, and not necessarily passing upon any question under the patent laws, cannot be reviewed by this court on writ of error. *Dale Tile Company* v. *Hyatt*, 125 U. S. 46. In that case it was held that an action upon an agreement in writing, by which, in consideration of a license from the patentee to make and sell the invention, the licensee acknowledges the validity of the patent, stipulates that the patentee may obtain the reissue thereof, and promises to pay certain royalties so long as the patent shall not have been adjudged invalid, is not a case arising under the patent laws of the United States, and is within the jurisdiction of the state courts; and reference is made by Mr. Justice Gray, delivering the opinion of the court, to a series of decisions sustaining that conclusion. Thus in *Brown* v. *Shannon*, 20 How. 55, it was decided that a bill in equity in the Circuit Court of the United States by the owner of letters patent to enforce a contract for the use of the patent, and in *Wilson* v. *Sandford*, 10 How. 99, to set aside such a contract because the defendant had not complied with its terms, was not within the acts of Congress by which an appeal to this court was allowable in cases arising under the patent laws, without regard to the value of the matter in controversy.

So in *Albright* v. *Teas*, 106 U. S. 613, where a suit was brought in a state court, the parties thereto being citizens of the same State, for moneys alleged to be due to the plaintiff under a contract, whereby certain letters patent granted to him were transferred to the defendant, it was held that the

suit, not involving the validity or the construction of the patents, was not one arising under a law of the United States, and could not be removed to the Circuit Court.

In *Machine Company* v. *Skinner*, 139 U. S. 293, in an action for breach of contract in refusing to account and pay for a certain patented invention, the Supreme Court of New York adjudged upon the trial that plaintiff in error had agreed to use defendant in error's device upon all its machines, and also that it had in fact used them or their mechanical equivalent; but the court in general term, in affirming the judgment, found it unnecessary to determine whether the plaintiff in error had actually made use of the device or its equivalent, and held it to be liable upon the ground that it had agreed to use it upon all the machines, and was therefore bound to pay its value as fixed by the referee. The judgment was affirmed by the Court of Appeals without an opinion, and the writ of error from this court was dismissed, because it was apparent that the case might properly have been determined on a ground broad enough to sustain the judgment without resort to a Federal question.

It has also been decided that an action in the Circuit Court by a patentee for breach of an agreement of the licensee to make and sell the patented article and to pay royalties, in which the validity and the infringement of the patent are controverted, is a case " touching patent rights," of which this court has appellate jurisdiction, under section 699 of the Revised Statutes, without regard to the sum or value in dispute. *St. Paul Plow Works* v. *Starling*, 127 U. S. 376. And attention was in that case called to the fact that the language applied to this subject in the patent act of 1836, under which the cases of *Wilson* v. *Sandford* and *Brown* v. *Shannon*, *supra*, were decided, was that used in that act in defining the jurisdiction of the Circuit Court in patent cases, namely, " actions, suits, controversies and cases arising under any law of the United States granting or confirming to inventors the exclusive rights to their inventions or discoveries " (5 Stat. 124), while by the act of 1870, the words were, " in any action, suit, controversy or case, at law or in equity, touching patent

rights " (16 Stat. 207); and that this language was carried forward into the corresponding section of the Revised Statutes.

The contract in controversy did not involve the existence nor the scope of the monopoly conferred by the letters patent. The decree might indeed furnish a defence to an action for the unauthorized appropriation of the invention, but that would not bring a case lying purely in contract within the rule applicable when the validity or extent of the patent is directly in issue. The restraint granted by the decree was the consequence of sustaining the contract, and the effect it might have did not in itself deprive the state court of jurisdiction over the subject matter.

But it is argued that the writ of error should be maintained in view of the original litigation in the Circuit Court and the pendency of the appeal in this court when the decree of the state court was rendered. It is said that the interference sought to be enjoined was the suit which, though then determined, was afterwards appealed and the prosecution of the appeal itself, and that the state court had no jurisdiction to compel a settlement of an infringement case brought in a United States court prior to the action of the state court, or to enjoin further proceedings in the nature of an appeal to this court, and that the validity of an authority exercised under the United States was decided against, or a right claimed under the laws of the United States was denied, by the decree. We do not think the position tenable.

At the time this bill was filed it had been decided by the Circuit Court of the United States that the alleged patent was void, and no appeal had then been taken. We do not understand that Nichols, Shepard & Co. set up the fact of the institution and disposal of the prior suit as a ground on which it sought relief, but that it claimed that whether the patent was or was not valid, it had bought and paid for the right to use the device in question. The subject matter of this suit differed from the subject matter of that suit, and nothing in this suit prevented plaintiffs in error from prosecuting their appeal, which they did with the result that this court held

their patent to be void. *Marsh* v. *Nichols*, 128 U. S. 605. And it was not only held that the patent was void, because of the omission of the signature of the Secretary of the Interior, but as the signature was attached after the commencement of the suit, that no accounting for profits earned subsequently could be claimed therein, as such accounting could be demanded only where the infringement complained of took place previously and continued afterwards.

The bill in the Circuit Court had been dismissed. So long as that decree stood the bill could have no operation upon the suit in the state court. If the decree were vacated by reason of the appeal, the pendency of the latter could not in itself exclude the state court from the right to adjudicate upon the matters over which it had jurisdiction and award the relief it was competent to administer.

What the state of case might have been if this court had reversed the decision of the Circuit Court, sustained the patent and directed an accounting, we are not called upon to consider, nor to define the extent of the risk incurred by the appellee in proceeding to a decree before the appeal was disposed of.

Plaintiffs in error had the right to take their appeal from the final decree of the Circuit Court, and this right was not denied or attempted to be denied by the state court, although it is ingeniously argued that the decree of that tribunal may be so construed as to produce that result. But so far from this being intended, the Supreme Court of Michigan held that the subject matter of the two suits was so different that the prosecution of the one did not interfere with the prosecution of the other. The view thus entertained was wholly inconsistent with any attempt to interfere with the plaintiffs in error in the prosecution of their appeal, or any denial of their rights in respect thereof.

Whether or not a release given by plaintiffs in error under the state court decree before the appeal had been heard would have been allowed to operate as a release of errors, is a question that does not arise. That decree was not brought forward on the hearing of the appeal, and was not considered

by the court in arriving at its conclusions. If such would have been the effect of this release if given as directed, and if in the opinion of this court that effect could properly have been recognized, then the appeal might have been disposed of on that ground; but if the contention of counsel were correct, it is not to be doubted that the judgment of this court would have been such as the circumstances and the law required.

Undoubtedly, Nichols, Shepard & Co. might have set up the contract as a defence to the charge of infringement, and it was for the state court to determine what weight the circumstance that it did not do so had upon the question whether any such contract had ever been made. Moreover, it is claimed by defendant in error that to use the license as a defence would not have given it the affirmative relief to which it was entitled, because the contract covered a subject matter broader in its scope than either the first or second patent. At all events, it was not set up and was not passed upon by the Circuit Court or by this court, and requires no further mention, as we are not considering the case upon the merits. And the same remark may be made as to the interference proceedings, which are referred to in argument as not showing the assertion of the alleged contract.

In our judgment this suit was not one arising under the patent laws of the United States, nor did the decree involve the denial of an authority exercised, or of any title, right, privilege or immunity claimed, under the Constitution or laws of the United States; and therefore, there being no Federal question, the writ of error must be

*Dismissed.*