STANDARD SCALE & FOUNDRY CO. v. McDONALD et al.

(Circuit Court, W. D. Missouri, W. D.   January 25, 1904.)

**1. PATENTS—PROCUREMENT BY FRAUD—REMEDY OF ACTUAL INVENTOR.**

An applicant for a patent, while his application is pending in the Patent Office, has no exclusive right to the invention which will sustain a suit in equity by him to enjoin another from using the same and for an accounting, although it is shown that, while he was the original inventor, defendant wrongfully and by fraud has secured a patent to himself for the invention. The patent laws contemplate that the right to a patent shall in all cases be determined in the first instance by the Patent Office.

In Equity.   On demurrer to bill.

This is a bill in equity to enjoin the defendants from the use of a certain patent, and for an accounting to the complainant. The substance of the bill is that in 1901 one Darius M. Orcutt invented and perfected a certain new, useful, improved wagon scale, known as the "Pitless Scale," and that he is the true, original, and first inventor of said improvements, with other allegations that it had not been invented or used in any foreign country or in this prior to his invention and use; that said Orcutt was employed in 1901 by the defendants to superintend the manufacture and sale of wagon scales at their factory in this state, during which time he made and applied the discovery in question; that he filed an application in the office of the Commissioner of Patents, in conformity with the statute and the rules prescribed by the commissioner, on the 16th day of February, 1903, for a patent on his invention, and that he was afterwards informed, and for the first time learned, that the Commissioner of Patents, on an application for letters patent for said invention theretofore filed by two of the defendants, had granted said defendants letters patent therefor, issued on the 17th day of February, 1903; that the said patentees were not the original and first inventors of said device, and that they had obtained the same by fraudulent representations to the Patent Office Department, and in fraud of the rights of said first and original inventor; and that the complainant became the owner of all the rights and interest of the said Orcutt in said invention, by a proper deed of assignment, which had been duly filed in the office of the Commissioner of Patents. The bill alleges that the defendants under said patent are wrongfully manufacturing said scales, using said invention in fraud of the rights of the complainant, and to the injury of its business; praying for an injunction against the defendants in the further use thereof and for an accounting.

To this bill the defendants demur on the ground that the complainant has no such title or interest in the invention as to enable it to maintain this suit, and that it does not appear from the bill that the United States has granted letters patent on the invention sued upon to the complainant.

Karnes, New & Krauthoff, for complainant.
Higdon & Higdon and Jas. F. Mister, for defendants.

PHILIPS, District Judge (after stating the facts as above).   The question to be decided is, where A. claims to be the original inventor of a patentable device, for which he is entitled to a patent from the United States, and B. has wrongfully and surreptitiously, in fraud of the rights of A., obtained a patent from the government for the invention, has he a standing in a court of equity to enjoin B. from the use of the patent, and for an accounting?   The only reported decisions touching directly this question are Hoeltge v. Hoeller, 2 Bond, 386, Fed. Cas. No. 6,574, and Murjahn v. Hall (C. C.) 119 Fed. 186.   The former denies the right, upon the ground that, the defendant having a

patent, all presumptions of law are in favor of its validity, and that, notwithstanding the complainant has made his application for a patent right, which at the time of filing his bill had not been passed upon by the Commissioner of Patents, his right was only inchoate, and that the court was without jurisdiction to anticipate the decision of the Commissioner of Patents upon the application, and decide ·in this indirect way the validity of the defendants' patent, and that, until the complainant succeeded in obtaining a patent, he was not in a position to contest the validity of the defendants' patent by a suit which, in effect, was for an infringement. The latter case overruled the demurrer to the bill. The opinion of Judge Townsend, in the latter case, is quite brief. The conclusion of the court would seem to have been influenced by the consideration that the defendant had, by cunning and deceit, obtained the complainant's secret of invention, and that it inheres in the principles of equity jurisprudence to obstruct and prevent the enjoyment of the fruits of such fraud. It did not appear in that case, as in the one at bar, that the complainant had filed his application for a patent with the Commissioner of Patents, and that such application was pending before the commissioner at the time of the issuance of the patent to the defendant.

As the exclusive right of the inventor to the use of his invention does not exist at common law, but depends alone upon legislative action, Congress has the power to prescribe the method and procedure by which such exclusive right shall be obtained. To this end, Congress has created a department known as the "Patent Office," to which is committed the whole matter of procedure in obtaining patents. To that department the original inventor must first make his application for a patent, accompanied with models, specifications, and certain descriptive, intelligible data. These are referred by the commissioner to a designated board of examiners, who, by reason of their learning and experience in such matters, are experts, presumably peculiarly qualified for determining whether the given device possesses the requisite qualities of an invention, as distinguished from mere mechanical skill; whether or not it be a practicable and useful device; and whether it has been anticipated in use by some other invention, or conflicts with some other patented grant. It does seem to me that it never was the mind of Congress that the inventor, without complying with the statutory scheme of submitting his claim to the Patent Office for its action thereon, could go into a United States court in the first instance to have determined the question of his right to a patent, and the exclusive use of the claimed invention.

Section 4904, Rev. St. U. S. 1878 [U. S. Comp. St. 1901, p. 3389], declares:

"Whenever an application is made for a patent which, in the opinion of the commissioner, would interfere with any pending application, or with any unexpired patent, he shall give notice thereof to the applicants, or applicant and patentee, as the case may be, and shall direct the primary examiner to proceed to determine the question of priority of invention. And the commissioner may issue a patent to the party who is adjudged the prior inventor, unless the adverse party appeals from the decision of the primary examiner, or of the board of examiners-in-chief, as the case may be, within such time, not less than twenty days, as the commissioners shall prescribe."

The bill discloses that, prior to the issuance of the patent to the defendants, the application of Orcutt to the Patent Office for a patent was filed. This brought the case precisely within the provision for a patent, conflicting with a "pending application"; thus devolving upon the commissioner the duty imposed by the statute to give the required notice and proceed to the hearing, etc. While the bill is silent as to whether or not the commissioner observed the statute in this respect, the presumption is always to be indulged that the public officer did his mandatory duty.

It may be conceded to complainant's contention that section 4918 of the statute [U. S. Comp. St. 1901, p. 3394] has no application to the situation of this case, for the reason that there are no "interfering patents," as the complainant admittedly has no patent. It may be further conceded that the procedure before the department prescribed in the instance of "interfering patents" is only a cumulative remedy, and is not exclusive of the right of either of the patentees to resort to a court of equity to have the adverse patent annulled. This was expressly ruled by the court of Appeals of the Seventh Circuit in Western Electric Company v. Sperry Electric Co., 59 Fed. 295, 8 C. C. A. 129, 18 U. S. App. 472, in which case Chief Justice Fuller presided on the circuit. It is to be observed that in that case the complainant had a conflicting patent.

As persuasive proof that it was never contemplated by Congress that the mere claimant to an invention not patented, without more, could maintain a suit in equity against the patentee, is the provision of section 4915 of the statute [U. S. Comp. St. 1901, p. 3392] which provides as follows:

"Whenever a patent on application is refused, either by the Commissioner of Patents or by the Supreme Court of the District of Columbia upon appeal from the commissioner, the applicant may have remedy by bill in equity; and the court having cognizance thereof, on notice to adverse parties and other due proceedings had, may adjudge that said applicant is entitled, according to law, to receive a patent for his invention, as specified in his claim, or for any part thereof, as the facts in the case may appear. And such adjudication, if it be in favor of the right of the applicant, shall authorize the commissioner to issue such patent on the applicant filing in the Patent Office a copy of the adjudication, and otherwise complying with the requirements of law. In all cases, where there is no opposing party, a copy of the bill shall be served on the commissioner and all expenses of the proceeding shall be paid by the applicant, whether the final decision is in his favor or not."

This statute shows that while Congress required the inventor to submit his claim for patent, in the first instance, to the patent department of the government, it did not intend that so valuable a thing as the inventor might obtain through the grant of a patent should be subject to the final arbitrament of that department. Why should Congress thus declare that, if the application for a patent should be refused either by the Commissioner of Patents or the Supreme Court of the District of Columbia, "the applicant may have remedy by bill in equity," if such remedy existed even in advance of any such adverse action by the Commissioner of Patents or the Supreme Court of the District of Columbia? The enactment would have been an act of supererogation.

Walker on Patents, § 316, recognizes the rule to be, as held in Hoeltge v. Hoeller, supra, that:

"A bill cannot be filed in an interference suit until the complainant's patent is actually granted; and, until the defendant's patent is actually granted, there is no occasion for such a bill."

In Gayler et al. v. Wilder, 10 How. 477, 492, 13 L. Ed. 504, Chief Justice Taney, while holding that "the discoverer of a new and useful improvement is vested by law with an inchoate right to its exclusive use, which he may perfect and make absolute by proceeding in the manner which the law requires," and, therefore, such inchoate right was assignable, enabling the assignee, on filing such assignment in the Patent Office, to obtain a patent, yet he expressly said:

"The inventor of a new and useful improvement certainly has no exclusive right to it until he obtains a patent. This right is created by the patent, and no suit can be maintained by the inventor against any one for using it before the patent is issued."

Further persuasive reason to my mind why it was never contemplated that one in the situation of this complainant can have a footing in a court of equity for the relief sought is the fact, admitted by learned counsel for complainant, that the complainant is not entitled to have the defendants' patent canceled, or the defendants' title thereunder divested and vested in the complainant. Mr. Justice Gray, in Kennedy v. Hazelton, 128 U. S. 667, 672, 9 Sup. Ct. 202, 32 L. Ed. 576, speaking to the instance where it was claimed that the complainant was the true owner of the invention, and that the defendant was not, said, inter alia, the patent law requires that the patent should be granted only to the original and first inventor, supported by his oath; that, while the patent issued to the wrongful party was prima facie evidence that the grantee was the inventor, yet, "as the patent, upon the plaintiff's own showing, conferred no title or right upon the defendant, a court of equity will not order him to assign it to the plaintiff, not only because that would be to decree a conveyance of property in which the defendant has and can confer no title, but also because its only possible value or use to the plaintiff would be to enable him to impose upon the public by asserting rights under a void patent." And as only the exclusive owner is entitled to call in question the use of his invention by a third party, and he cannot be such exclusive owner with such right until he has obtained a patent, it should follow that the complainant is not entitled to call upon the defendants for an accounting, and to enjoin them from the further use of the invention, until it has obtained the statutory evidence of such exclusive right, which is a patent. Whether or not the complainant, in the event it obtains such patent, can compel the defendants to account for profits earned by them prior to the grant of a patent to the complainant, is not involved in this litigation. As the court has the right to assume that the complainant is prosecuting his application before the Commissioner of patents as the statute contemplates, what is here held is that this suit is premature.

The demurrer is therefore sustained.