THE SMITH AND EGGE MANUFACTURING COMPANY *vs.*
EDGAR P. WEBSTER.

Third Judicial District, Bridgeport, April Term, 1913.
PRENTICE, C. J., THAYER, RORABACK, WHEELER and BEACH, Js.

The plaintiff sought to recover damages from the defendant, who was its confidential and trusted employee, for concealing, appropriating and converting to his own use a newly-completed model of an improved pencil sharpener the idea of which was conceived by the plaintiff, and for wrongfully applying for a patent thereon in his own name, claiming it as his invention, and refusing to permit the plaintiff or the equitable owner of the sharpener, who had contracted with the plaintiff for its exclusive manufacture, to make any use of, or to derive any benefit whatever from, the invention. Upon an appeal from a judgment for the plaintiff it was *held;*—

Smith & Egge Mfg. Co. *v.* Webster.

1. That it was immaterial whether an undertaking of the defendant "to assign all improvements or patents" he might "get up" while in the plaintiff's employ, in consideration of an increase of $500 "per year" in his salary, related back to improvements made before the date of the agreement, inasmuch as the trial court had found that the invention or improvement in question was not made by him but by the plaintiff's superintendent.

2. That such agreement was admissible in evidence to show the nature of the defendant's employment at the time of the wrongs complained of; and, as it did not purport to be a contract for any specified term other than from year to year, was not within the statute of frauds.

3. That the action, moreover, did not rest upon the defendant's contract, but upon his alleged tortious acts and declarations.

4. That such acts and declarations were intended to prevent the equitable owner and the plaintiff from making use of the improvement, and having succeeded, as the trial court had found, in accomplishing his object, the defendant was not now in a position to claim that the plaintiff should have made another model and carried out its contract with the equitable owner who had ordered five thousand of the sharpeners; especially as this would have provoked litigation with one who under the grant of the patent was prima facie the inventor of the improvement.

5. That the damages recoverable were not to be confined to the property value of the model, but extended to all actual damages proved which naturally flowed from the wrongful acts of the defendant in claiming and patenting the invention as his own; a proper foundation for such recovery having been laid in the complaint.

6. That such damages included moneys expended in producing the model, including the labor and material entering into it; the expense of moving machinery to the plaintiff's plant to manufacture the sharpener; and the loss of profits on an order for five thousand of the sharpeners given to the plaintiff by the equitable owner; the defendant having had full knowledge of these facts and of the situation before the commission of his wrongful acts.

An allegation in the body of the complaint of the facts on which special damages are founded dispenses with the necessity of a reference to them in the *per quod* clause.

Special damages, which must be pleaded, are those which, though a natural consequence of the wrong complained of, are not the necessary result thereof.

Whether a complaint sufficiently gives notice of the damages awarded must in each case be determined with reference to the character of the wrong complained of, and with some reference to the reason of the rule, which is to prevent a surprise to the defendant.

While a State court cannot pass directly upon the validity of a patent, it can, in an action like the present, determine which party origi-

nated the invention, and issue a restraining order accordingly as a protection against an additional threatened injury..

Argued April 9th—decided May 8th, 1913.

ACTION to recover damages for wrongfully and fraudulently appropriating and converting the model of an invention known as a pencil sharpener, which the plaintiff had perfected and was about to patent, and for an injunction and other equitable relief, brought to and tried by the Superior Court in Fairfield County, *Burpee, J.;* facts found and judgment rendered for the plaintiff for $2,000 damages, together with an injunction restraining the defendant from transferring said patent to any one except the plaintiff, from which judgment the defendant appealed. *No error.*

The plaintiff has for many years been engaged in the manufacture of hardware and in perfecting and making models, special machinery, and articles of manufacture for its customers. The defendant, Webster, was employed by the plaintiff, and from May, 1909, to April, 1911, held the position of confidential assistant to the superintendent of the mechanical department. About May 1st, 1909, the defendant's salary was raised from $1,500 to $2,000 a year in consideration of his agreement to assign to the plaintiff all improvements or patents which he might get up while in the plaintiff's employ, both on its own work and on work done in perfecting and making goods for its customers. In the fall of 1910 the plaintiff contracted with the Rapid Manufacturing Company of New York to construct for it a model of a so-called "click" pencil sharpener, and to manufacture for it five thousand of such sharpeners, and for that purpose a quantity of machinery was moved from Newark, N. J. to Bridgeport, at the plaintiff's expense, upon the agreement of the Rapid Manufacturing Company to refund the

expenditure when a model of the pencil sharpener was perfected and delivered, to be used in applying for a patent for the benefit of both of the contracting parties. The model, when made, was unsatisfactory and defective in operation, and it was thereupon agreed that the plaintiff should, if possible, get up a more satisfactory form of pencil sharpener to be substituted, for all the purposes of the above contract, for the original "click" sharpener. Such an improved model was got up in accordance with ideas conceived by plaintiff's superintendent, Mr. Smith, and communicated to the defendant; the improved model was exhibited to and accepted by the Rapid Manufacturing Company, and was agreed upon as a substitute for the original "click" pencil sharpener, and a contract for five thousand pencil sharpeners in accordance with said improved model was made at an agreed price, and it was also agreed that said pencil sharpener, as improved, should be patented, if possible, for the benefit of the plaintiff and of the Rapid Manufacturing Company. At the time when said improved model was demonstrated to and approved by the representative of the Rapid Manufacturing Company, it was not entirely completed and ready for market, but was afterward finished and detailed estimates of the cost of manufacture were made, so that the profit on said contract for the manufacture of five thousand of such pencil sharpeners was definitely ascertained. The defendant knew of said contract, and knew the amount of profits so calculated, and the amount of expenses which the plaintiff had been at in moving said machinery from Newark, and knew the work and material which had been put into the development of said improved pencil sharpener.

After said improved model had been completed, and the contract as amended had been made, and the cost of manufacture ascertained, the defendant, with-

out the plaintiff's permission, carried it away from the plaintiff's premises and concealed it and converted it to his own use; claiming that the model in question was his own invention, that he had got up a company of his own to manufacture it, that he had applied for and intended to obtain a patent thereon, and had transferred, or intended to transfer, the invention and the patent to said company, and that the Rapid Manufacturing Company and the plaintiff should never have the use of it. In fact, the defendant had, after the improved model had been approved by the Rapid Manufacturing Company, applied for a patent in his own name. By reason of said conversion and breach of confidence, and application for a patent and refusal to turn over the same to the plaintiff or to allow the plaintiff or the Rapid Manufacturing Company any use of the alleged invention covered thereby, the plaintiff has lost its contract with the Rapid Manufacturing Company and the profits thereof, and has lost the use and benefit of the time and materials expended in developing said improved pencil sharpener, and has lost the opportunity to be reimbursed for the cost of moving said machinery from Newark to Bridgeport. Said items amount in all to over $2,000.

*Frederick W. Holden* and *William H. Comley, Jr.*, for the appellant (defendant).

*Robert E. DeForest*, for the appellee (plaintiff).

BEACH, J. The defendant claims that the pencil sharpener exhibited to and approved by the Rapid Manufacturing Company and subsequently patented had been in fact invented by him prior to 1907 or 1908, and that he was not bound by the terms of the contract of May 1st, 1909, to convey the same to the

plaintiff. There was much conflicting testimony upon the question whether the improvement embodied in said model originated with the defendant prior to 1909, or whether it was first conceived in 1910 by Mr. Smith. The trial court has found this fact in favor of the plaintiff and against the defendant, and has refused to find a number of paragraphs in the defendant's draft-finding which, if found, would have tended to support the defendant's claim that said improvement was invented by the defendant in 1907 or 1908. The findings and refusals to find on the part of the trial court were excepted to and assigned as error, and all the evidence has been certified as a part of the record on appeal. On careful examination of the record, we are unable to find that the court has found any material fact without evidence or refused to find material facts which were admitted or uncontradicted.

The finding of the court that the improvement was conceived by Smith and communicated to defendant, and its refusal to find that said improvement was invented by the defendant, render it unnecessary to determine whether the contract of employment of the defendant, under which he agreed to assign "all improvements or patents which he may get up while in our employ," was intended to relate back to improvements gotten up prior to May 1st, 1909, because the conversion and patenting of an improvement not made by the defendant were wrongful irrespective of the contract.

It is claimed that the court erred in admitting in evidence the terms of the defendant's employment, as expressed in the plaintiff's Exhibit A, on the ground that the said writing was not signed by the defendant and was an agreement not to be performed within a year. The writing was as follows: "Commencing May 1st, '09, E. P. Webster will receive 2,000 per year in-

stead of 1,500. In consideration of this 500 per year advance he is to assign to the Company, the S. and. E. Mfg. Co., all improvements or patents which he may get up while in our employ, both on our original work or work done for others who have us perfect and make goods for them.

4–21–09.                    Chas. E. Smith.
O. K. O. C. Smith."

We do not think the contract expressed in this writing is within the statute of frauds. It does not purport to be a contract for any specified term of employment, other than a contract for employment from year to year commencing May 1st, 1909. Moreover, the action is not brought upon the contract, but sounds in tort; and the court has found as a fact that the defendant did not "get up" this particular improvement, so that neither the damages nor the injunction rest upon a breach of the contract to assign, but upon the wrongful conversion of the model and deprivation of the use and benefit of the improvement; the injunction being granted to maintain the *status quo* and to prevent the patent from getting into the hands of a bona fide purchaser without notice of the plaintiff's rights.

For these reasons the memorandum was properly admitted in evidence, after proof that the defendant had received the increased salary and assented to the terms of its contract, as showing the nature of the defendant's employment at the time of the transfer complained of.

The remaining assignments of error, so far as they are pursued on the appellant's brief, relate to the alleged errors of the court in permitting the plaintiff to recover damages for loss of profits on its contract with the Rapid Manufacturing Company, and for the expense incurred in moving machinery from Newark

to Bridgeport in connection with said contract, and the amounts expended by the plaintiff for perfecting and constructing the model.

It is said, in the first place, that the plaintiff was not prevented from carrying out its contract by the wrongful acts of the defendant, but that the plaintiff could have made, and afterward did make, another model, and could have filled out its contract by making the five thousand pencil sharpeners in accordance with such substituted model; but the court has found that the defendant not only wrongfully applied for a patent in his own name as inventor, but at the time when he converted the model declared that the Rapid Manufacturing Company should never have the use of the same for any purpose, but that he had applied for a patent and formed a company to manufacture the article himself.

One of the terms of the contract between the plaintiff and the Rapid Manufacturing Company, as found by the court, was that the model, when got up, should be used in an application for a patent to be obtained for the benefit of the plaintiff and of the Rapid Manufacturing Company. It is obvious that under such a contract the plaintiff could not have reasonably expected the Rapid Manufacturing Company to accept five thousand pencil sharpeners in respect of which the defendant Webster was threatening them with a patent suit. The defendant, by applying for the patent and by making the declarations above referred to, intended to prevent the Rapid Manufacturing Company and the plaintiff from making use of the improvement. He succeeded, and the court did not err in finding that he did succeed.

On the question of damages, the defendant's claim is that the action is for the conversion of the model, and that the primary measure of damages is the value

of the property; that any damages beyond this are special damages which must be pleaded; and that the complaint does not sufficiently give notice of the damages actually awarded.

But, although the conversion of the model is one element of the wrong, another element consists in the deprivation of the use and benefit of the improvement in pencil sharpeners by the defendant's wrongful patenting and threats; so that the plaintiff is entitled also to recover the actual damages, as proven, which naturally flowed from such wrongful patenting and threats, provided a proper foundation for such recovery has been laid in the complaint. The complaint alleges the existence of a contract with the Rapid Manufacturing Company to perfect a model pencil sharpener to be used in an application for a patent for the joint benefit of the contracting parties; that the plaintiff, in addition to paying the defendant, paid out $800 which, by the terms of its contract, it would have been entitled to receive back on the delivery of said model; that the plaintiff was to have the sole right to manufacture said pencil sharpener under said patent and was to make application for the patent and assign it to the Rapid Manufacturing Company; and that the defendant, well knowing these facts, and for the purpose of depriving the plaintiff of its rights, profits, and benefits in said model and said patent by said arrangement with the Rapid Manufacturing Company, committed the acts complained of, whereby the plaintiff was prevented from recovering back its expenditure aforesaid, and from obtaining the patent and the benefit thereof. It is objected that the *per quod* clause does not specifically refer to the contract with the Rapid Manufacturing Company, but as long ago as *Churchill* v. *Watson*, 5 Day, 140, it was held that, where the facts on which the special damages

were founded were pleaded in the body of the declaration, they need not be referred to a second time in the *per quod* clause. In the case last mentioned the allegation of the complaint was that the plaintiff was building a vessel and had procured a suitable mast, and that the defendant, knowing these facts, and with intent to hinder and obstruct the building of the vessel, with force and arms took away and converted said mast. It was held that the plaintiff might prove that no other mast could be procured on the river, and the jury might assess damages for the delay and interruption.

In the present case the defendant's claim is that the contract, as proved, was not for the exclusive manufacture of the improvement, as alleged, but for the manufacture of a specific number of such articles; and hence that the damages awarded were founded on a different contract from that which is pleaded. It appears, however, from the evidence, that the arrangement was, as pleaded, for the exclusive manufacture by the plaintiff. Then the correspondence embodying the details of this arrangement shows that the manufacture of from fifty thousand to one hundred thousand pencil sharpeners was agreed upon, and that the specific order for five thousand was given under and in pursuance of this more comprehensive agreement. It is also found that the defendant was fully informed of the order for five thousand pencil sharpeners, and assisted in making the estimate of the cost of filling it.

Special damages which must be pleaded are those which, though a natural consequence of the wrong complained of, are not the necessary result thereof; and the question whether the complaint sufficiently gives notice of the damages awarded must in each case be determined with reference to the character

of the wrong complained of, and with some regard to the reason of the rule, which is to prevent a surprise upon the defendant. *Cordner* v. *Hall*, 84 Conn. 117, 79 Atl. 55. Under the findings in this case, we think that the complaint lays a sufficient foundation for proving and awarding as damages the plaintiff's loss of profit on its contract with the Rapid Manufacturing Company, as well as the expense of moving the machinery from Newark to Bridgeport.

The only other element of damage objected to is that the court appears to have included in the total amount something on account of the expenses of perfecting and producing the model and labor and material expended in the same. As to this item, the same objection is made, that the general damages in an action for conversion of the model are limited to its value; but, as is already stated, the wrong complained of is not simply the conversion of the model, but the wrongful deprivation of the use and benefit of the invention, and the loss of the money expended in the production of the model and of the labor and material entered into it was not only a natural consequence, but was the necessary consequence of the defendant's conduct.

We are not impressed by the argument that, if the defendant was not the inventor of the improvement, he could not successfully have carried out his threats. As the grant of the patent was prima facie evidence that the improvement was invented by the defendant, both the plaintiff and the Rapid Manufacturing Company were justified in declining to provoke a litigation, although they had a good defense.

While the State court cannot directly pass upon the validity of the patent, it can, in an action of this kind, pass upon the question whether Smith or Webster first originated the improvement, and, upon finding

that fact in favor of the plaintiff, may restrain the defendant from assigning the patent to a third person, as a mode of protecting the plaintiff against an additional threatened injury.

There is no error.

In this opinion the other judges concurred.