## CRAIG DEMAGNETIZER & INK DRYER CORPORATION v. STATIC CONTROL CO., Inc., et al.

(Circuit Court of Appeals, Second Circuit. December 3, 1923.)

No. 18.

**I. Patents ⚖=328—Craig patent, No. 993,034, held not infringed.**

Craig patent, No. 993,034, for improvements in means and methods of demagnetizing paper, *held* not infringed.

**2. Patents ⚖=114—Rule stated as to what court has jurisdiction of controversy as to priority of two parties claiming same invention.**

A controversy as to priority of two parties claiming the same invention is properly within the jurisdiction of a tribunal other than the Patent Office, and other than the Court of Appeals of the District of Columbia, only where the general public, in addition to the two parties claiming priority, is an interested party, and the District Court, where public is not an interested party, will refuse to take jurisdiction, especially where there is an interference proceeding pending in the Patent Office, under Rev. St. § 4904 (Comp. St. § 9449).

**3. Patents ⚖=112(4)—Rule stated as to effect of prior decision as to priority of invention.**

The decision of priority controversy, except one arising under Rev. St. §§ 4915, 4918 (Comp. St. §§ 9460, 9463), is to be considered a finality in any subsequent infringement litigation, where the patent in suit is not a patent granted on the invention which was involved in said priority controversy in the Patent Office, and until the applicant has exhausted his rights through the tribunals of the Patent Office he may not raise the question of priority as between two claiming the same invention, in view of Rev. St. § 4904 (Comp. St. § 9449), and Act Feb. 9, 1893, § 9 (Comp. St. § 9456), superseding Rev. St. § 4911.

**4. Courts ⚖=290—Count relating to patent held not to involve federal question.**

A bill, as to a count seeking an injunction restraining from manufacturing a device because one of the defendants sold his patent and interest to the plaintiff, raising no controversy as to the patentability, title, scope, or monopoly of any patent, does not involve a federal question, and defendants objecting to the jurisdiction must be dismissed as to such count.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the Craig Demagnetizer & Ink Dryer Corporation against the Static Control Company, Incorporated, Frank R. Craig, Andrew J. Smith, and Sarah R. Craig, for infringement of patent No. 993,034, and for an injunction. Decree for defendants. Affirmed.

⚖=For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

William H. Freedman, of New York City (Thomas A. Hill and Edmond Congar Brown, both of New York City, of counsel), for appellant.

Munn, Anderson & Munn, of New York City (T. Hart Anderson, John K. Brachvogel, and Augustus M. Henry, all of New York City, of counsel), for appellees.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. On May 23, 1911, there was granted to the appellee Frank R. Craig letters patent No. 993,034 "for improvements in the means and methods of demagnetizing paper" on an application filed January 9, 1908. Craig transferred the patent to the appellant. In that agreement of transfer, he covenanted and agreed that any further instruments necessary would be executed by him and any further acts and things which would be necessary to carry into full effect the true intent and meaning of the agreement between the appellant and the appellee Frank R. Craig would be done so that the appellant would become the sole and exclusive owner of the invention and "all improvements thereon and modifications thereof which would become the property of (said Craig) or which should come under his (Craig's) control." He agreed that he would not manufacture or sell any machines made in accordance with the said letters patent as long as the appellant should manufacture a machine in which gas is employed. At the time of this transfer, Craig was a large stockholder and officer of the appellant. He later parted with the control of the stock, resigned as an officer, and thus severed his connection with the company. Later, appellee the Static Control Company, Inc., was incorporated, and he became interested as an officer of that company, as did his wife and son-in-law, the appellees Sarah R. Craig and Andrew J. Smith. This corporation proceeded to manufacture and sell a device which is claimed to be an infringement of the patent in suit. The appellees say that their structure is manufactured under and pursuant to letters patent No. 1,286,132 which were applied for by the appellee Smith and assigned before issuance to the appellee Sarah R. Craig. This patent is for a printing press and was applied for August 31, 1918, and granted November 26, 1918. The appellant sought to prove on the trial that Smith was not the real inventor of this patent, but that one Cohen, now an officer and stockholder of the appellant, was the true inventor. The devices made under each of the letters patent relate to means for removing static electricity from paper. When paper is passed through a printing press, especially in dry and cold weather, the friction of various parts of the machinery upon each other and upon the paper causes the latter to be charged with static electricity. The sheets of paper, as they are discharged from the press, tend to adhere together, and it is very difficult to handle the same on that account. There is a tendency of the fresh and still moist ink upon the paper to offset from one sheet to the other. It is therefore desirable to not only discharge the static electricity from the paper as it comes from the press, but also to dry the ink. This is accomplished by passing the paper as it comes from the press over a series of small gas burners.

arranged in a row transversely along the path of the paper so that the well-known action of a current of heated air may discharge the static electricity. On account of the danger of fire from such a device, it becomes necessary to provide automatic means by which, if the motion of the press stops so that the paper would remain stationary over the gas burners, the flames thereof shall be automatically extinguished. The claims of the appellees' patent in suit are as follows:

"1. The combination of a reciprocating carriage, a burner carried thereby and provided with a cock and means for automatically actuating the cock during the movement of the carriage."

"7. The combination of a reciprocating carriage, a longitudinal burner movable laterally therewith and automatic means actuated by the movement of the carriage for controlling the admission of gas to the burner."

The appellant seeks the following relief: (a) That its patents be held to be valid and infringed by the appellee's device; (b) that the invention, patent No. 1,286,132 be declared an invention of Herbert Cohen, an officer of the appellant, and that letters patent for said invention be mandatorily transferred from Smith to it; (c) that the appellees be restrained from selling the devices for removing static electricity from paper because of the agreement entered into between Craig and the appellant. It seems to be conceded that the device manufactured and sold by the appellee is not that illustrated and described in the patent in suit, No. 993,034; but it is urged that for the purpose of this suit, this patent must be taken as a basic or pioneer one covering all the devices intended to remove static electricity from paper, and that the claims thereof should be given the fullest interpretation. It is argued that the appellee Frank R. Craig, having applied for and having obtained this patent and having sold the same to the appellant for a valuable consideration, thereafter entered into a conspiracy with the other appellees for manufacturing and selling a device of the same character, is now estopped from attempting to justify his case "by straining interpretations of the language of the claim."

[1] The devices of both patents are applied to printing presses which have a reciprocating or back and forth traveling support for handling the printed sheets delivered from the press. Each time this support moves back and forth, it delivers a printed sheet. On the rearward movement of the carriage, the sheet is carried with it, and on the forward movement of the carriage, a corresponding forward movement of the sheet is prevented in a manner familiar to the printing art, so that the rear end of the carriage during the forward movement of the latter sweeps from one end of the halted sheet to the other. In both devices, a gas burner is mounted adjacent to this rear edge of the travelling support so that the flames or heated air from the burner may similarly sweep over the sheet from one end to the other. In the patent in suit, the adjustable stops are provided and so located on the part of the printing press fixed relative to the carriage, that at or near the end of the travel of the carriage in either direction, one of said stops engages the handle of a valve fixed on the carriage and in the fuel supply line for the burner and lowers the gas flame or, if the common expedient of a pilot light is present, extinguishes the flame. The arrangement is such that during the major travel of the support relative to the

sheet, the underlying burner is operating at full blast. The sole object of this is to economize the amount of gas to be used. No other object is apparent or stated. The means of closing or partially closing the supply valve for the burner apparatus was designed to operate for the gas economy purposes indicated at or near the opposite ends of the path of travel of the reciprocating support. It is clear that said means were designed to operate and could only operate during the movement or by the movement of the carriage. It was not designed to operate, nor could it be operated, as a result of the stoppage of the carriage at a point well removed from the opposite ends of its path of travel as might frequently occur when human hands have in charge the starting and stopping of the printing press and its power driving means. In the invention of the Smith patent, pursuant to which appellee's device is made, this contingency of the fallability of human hands is guarded against so that if a stop occurs, the failure to shut off the burner would be guarded against. If there was such a stop, the halted sheet overlying the flaming burner would ignite with possibly dangerous results. Therefore, in the Smith device, a driving means was brought into the combination comprising an electric motor and burner, a burner valve and electro-magnet, a circuit common to both said motor and magnet and a manually operable switch in said circuit. And there is a switch control of the heating means so as to automatically start the heating means on the starting of the motor and to automatically stop the heating means on stopping the motor. Thus, an automatic control was provided for the heating means. The burner is not extinguished either during or by the movement of the carriage. The stopping of the carriage is not the causal agent. The stopping of the motor is the causal agent. The stopping of the carriage, like the shutting off of the burner, is merely one of the consequences of the stopping of the motor. This precluded the possibility of conflagration and is the purpose of the Smith patent. Therefore we think that the words contained in Claim 1 "during the movement of the carriage" should either be limited to the general method disclosed in the specifications and diagrams which would give them the meaning of "by movement of the carriage" or it must be limited to an automatic actuation as the press reciprocates. We think the appellees' device does not infringe.

[2] Evidence was offered upon which the appellant bases its claim that Cohen, the secretary and treasurer of the appellant, was, in point of fact, the inventor of the patent in suit instead of the appellee, Alfred J. Smith. It is accordingly urged by the appellant that it is entitled to relief directing Smith to convey to it the Smith letters patent. It appears there is now pending in the Patent Office an interference proceeding under section 4904 of the Revised Statutes (Comp. St. § 9449) which constitutes a test as to the priority of invention, and this puts in issue the validity of the patent. That application is now pending on appeal before the board of examiners. The court below held that the exclusive remedy of the appellant for testing the priority of invention is with that tribunal except in a direct suit by the Smith patentee for infringement, where the validity of his patent, including the questions of originality and date of invention, might be litigated. A

controversy as to priority of two parties claiming the same invention is properly within the jurisdiction of a tribunal other than those of the Patent Office and other than the Court of Appeals of the District of Columbia only where the general public, in addition to the two parties claiming priority, is an interested party. The District Court of the United States has jurisdiction of a suit where the owner of an issued patent is suing for infringement and where one of the defenses is the allegation that the alleged infringer was the inventor's grantee of an identical patent issued by the Commissioner to cure the inadvertent issue of the patent in suit after an interference proceeding between the parties and after the defendant in the infringement suit has been awarded priority by a tribunal of the Patent Office. Automatic Weighing Mach. Co. v. Pneumatic Scale Corp (C. C.) 158 Fed. 415. The reason for this is that the patent in suit was invalid as not granted to the original and first inventor under section 4892 of the Revised Statutes (Comp. St. § 9436). But where the issue of priority is merely between two rival inventors and the public at large is not a party, the District Court will not assume jurisdiction and this particularly where the validity of the invention is still before the Patent Office. Likewise, it is apparent that the interference proceeding now pending between the parties is in regard to the patent in suit. The decision as to the infringement of the patent in suit must necessarily be decided without regard to the controversy now pending between the parties in the Patent Office. Section 4904 of the Revised Statutes provides that where interference is alleged, the Commissioner shall direct the primary examiner to proceed to determine the question of priority of invention and he may issue a patent to the inventor who is adjudged the prior inventor unless the adverse party appeals from the decision of the primary examiner or of the board of examiners in chief, as the case may be, within such time, not less than 20 days, as the Commissioner shall prescribe. Appeal from the board to the Commissioner in person is provided by section 4910 of the Revised Statutes (Comp. St. § 9455), and appeal from the Commissioner is provided by section 9 of the Act of Feb. 9, 1893, c. 74 (Comp. St. § 9456), superseding section 4911, Rev. St., and making the Court of Appeals of the District of Columbia, instead of the Supreme Court of the District of Columbia, the appellate tribunal in controversies as to priorities between two rival inventors, where, as here, the appellee is merely an applicant and not a patentee. The statute creates a right and also provides a remedy, and the remedy is exclusive. The appellant here has adopted the form of remedy given by the statute. Congress has made provision for all the various possible controversies involving any identity or nonidentity between an applicant patentee and the original and first inventor within section 4892 of the Revised Statutes, each exclusively to a particular jurisdiction. Section 4904 covers controversies as to priority between rival inventors neither of which or only one of which is the patentee. Section 4915, Rev. St. (Comp. St. § 9460), covers a controversy between an applicant, that is, one not yet a patentee, and the Commissioner involving the refusal of the latter to grant the applicant his patent. Section 4918 (section 9463) covers a controversy

between interfering patentees, that is, where both parties have already obtained their patents. It is only in the third controversy that the act states that the controversy may be carried over to the federal courts by a bill in equity. A mandamus will not lie to compel a Commissioner of Patents to obey strictly the ministerial order of his superior, the Secretary of the Interior, to countersign a patent signed by the Secretary. Butterworth v. United States, 112 U. S. 50, 5 Sup. Ct. 25, 28 L. Ed. 656. There it was said that the Commissioner of Patents in issuing or withholding patents, in reissues, interferences, or extensions, exercises quasi judicial functions, and that it is apparent from the nature of the examination and decisions he is required to make, a review must be had exclusively from the modes provided by law. So in Morgan v. Daniels, 153 U. S. 120, 14 Sup. Ct. 772, 38 L. Ed. 657, it was held that the decision of the Patent Office between contesting parties as to priority of invention was controlling in a subsequent suit between the same parties on the same question, even in a suit under section 4915, unless the contrary is established by testimony which carries thorough conviction.

"It is a controversy between two individuals over a question of fact which has once been settled by a special tribunal, entrusted with full power in the premises. As such it might well be argued, were it not for the terms of this statute [§ 4915] that the decision of the Patent Office was a finality upon every matter of fact."

[3] It is thus apparent that any priority controversy except one arising under sections 4915 and 4918 of the Revised Statutes is to be considered a finality in any subsequent infringement litigation where the patent in suit is not a patent granted on the invention which was involved in said priority controversy in the Patent Office. Until the applicant has exhausted his rights through the tribunals of the Patent Office, he may not raise the question here sought to be raised in the District Court.

[4] As to the third cause of action, there is no diversity of citizenship, but the appellant seeks as equitable relief, an injunction restraining the appellees from manufacturing the device in question because of the fact that Craig sold his patent and interest to the appellant as referred to above. Wrongs alleged raise no controversy as to the patentability, title, scope, or monopoly of any patent, and in no way whatever does this cause of action involve a federal question. This right of action is based upon the alleged facts not essential to those involved in other causes of action mentioned in the bill. They are clearly separate and distinct from the two other causes of action here involved. A similar question was presented in Geneva Furniture Mfg. Co. v. Karpen, 238 U. S. 254, 35 Sup. Ct. 788, 59 L. Ed. 1295, where a bill included several causes of action, some arising under the patent laws and others on breach of contractual relations. One of the defendants was a corporation and could not be sued without its consent, in the district, save in a case arising under the patent law. In such case it was held that the rule in equity respecting a joinder of causes of action yields to the jurisdictional statute, and that if the designated defendant objected to the jurisdiction, the bill must be dismissed so

far as that defendant is concerned as to the causes of action not arising under the patent laws. The court said:

"But the other portions of the bill stand upon a different footing. The causes of action which they present—those not founded upon an unauthorized making, using or selling of devices embodying the inventions of the plaintiff's patents but resting only upon a breach of contractual obligations—do not arise under the patent laws. New Marshall Co. v. Marshall Engine Co., 223 U. S. 473; Henry v. Dick Co., 224 U. S. 1, 14, 15. As to them no federal court can take jurisdiction of a suit against the West Virginia company without its consent, save in the district of its residence or that of the plaintiff, Judicial Code, § 51; and it hardly needs statement that the jurisdiction as limited and fixed by Congress cannot be enlarged or extended by uniting in a single suit causes of action of which the court is without jurisdiction with one of which it has jurisdiction. Upon this point the rule otherwise prevailing respecting the joinder of causes of action in suits in equity must of course yield to the jurisdictional statute. Thus the West Virginia company's objection while not good as to the entire bill was good as to the causes of action not arising under the patent laws. Whether these causes of action can be retained as against the other defendants, after they are eliminated so far as the West Virginia company is concerned, is not open to consideration now."

The appellees having objected to the jurisdiction of the court, raised the question of the power of the court to consider and decide this controversy one way or the other. We think since there is no diversity of citizenship and no relation between these alleged contractual wrongs and the question of validity and infringement of the patent in suit, that the District Court was not vested with jurisdiction to hear the controversy raised by this cause of action.

For these reasons the decree is affirmed.