## BECHER v. CONTOURE LABORATORIES, Inc., et al. *

Circuit Court of Appeals, Second Circuit.
November 12, 1928.

No. 123.

*Certiorari granted 49 S. Ct. 179, 73 L. Ed. ——.

Manton, Circuit Judge, dissenting.

O Ellery Edwards, of New York City, for appellant.

Moers & Rosenschein, of New York City (Charles S. Rosenschein, of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

SWAN, Circuit Judge. The relief sought on the motion for a preliminary injunction was twofold: (1) To prevent infringement of Becher's patent; and (2) to prevent the further prosecution by defendants of a suit pending between the same parties in the Supreme Court of the state of New York, wherein judgment had been entered directing Becher to assign his said patent to Herbert Oppenheimer, one of the plaintiffs in that litigation and a defendant in this. But the whole argument centers upon the refusal of the District Court to enjoin prosecution of the state suit; if the state court had jurisdiction, its judgment precludes plaintiff from claiming infringement by the defendants. The appellant contends that that court had no jurisdiction of the litigation, because it was a case arising under the patent laws of the United States, and so within the exclusive jurisdiction of federal tribunals. Section 256 of the Judicial Code (USCA, tit. 28, § 371).

In the state suit, Oppenheimer and his assignee, Contoure Laboratories, were plaintiffs. They allege that Oppenheimer was the proprietor of an invention for a certain massaging instrument, and was engaged in devising improvements thereof; that he employed Becher to make mechanical parts of said instrument, and Becher agreed to keep secret and confidential such information as he should obtain from Oppenheimer in the course of doing such work; that Oppen-

heimer disclosed to Becher his said invention, and modifications and improvements thereof, in order that Becher might perform the agreed work, and that Becher appropriated Oppenheimer's ideas and invention, and in violation of his aforesaid agreement made application for a patent upon said instrument, and obtained upon said application the issuance of letters patent No. 1,634,316; that in said application Becher falsely stated that he was the inventor, although in fact, as Becher knew, Oppenheimer was the inventor of said instrument; that Oppenheimer had assigned his interest in said invention and instrument to Contoure Laboratories; that, upon learning of the patent issued to Becher, Oppenheimer and his assignee demanded that Becher discontinue making instruments pursuant to said letters patent, and assign the patent to them; that they have established a substantial trade in such instruments, and that Becher's sale of instruments such as are described in said letters patent causes them irreparable injury. The prayer for relief is (1) that Becher be declared a trustee ex maleficio for Oppenheimer's assignee of said invention and the letters patent; (2) that he be restrained from using or disposing of said instruments; (3) that he be enjoined from granting any rights under said letters patent; (4) that he deliver up to the plaintiffs all instruments in his possession; and (5) for damages and other appropriate relief. Becher's answer denied the allegations of the complaint; alleged the issuance to himself on July 5, 1927, of said letters patent, and that subsequently thereto Oppenheimer had amended a patent application which he had filed on June 26, 1926, and an interference had been declared between Becher's letters patent and Oppenheimer's amended application, which interference remained pending and undetermined in the Patent Office; and denied the jurisdiction of the state court. The state court sustained its own jurisdiction, and trial was had before a referee, who made a finding of facts supporting all of the allegations of the bill. Judgment was thereupon entered, adjudging Becher a trustee ex maleficio for the benefit of Oppenheimer of the invention and letters patent, and directing him to execute an assignment of the patent. Injunctive relief was also granted in accordance with the prayer of the bill. Becher then filed the present suit, to obtain an adjudication of the validity of his patent, and to enjoin the enforcement of the state court judgment.

The exclusive jurisdiction of federal courts in cases arising under the patent laws does not preclude state courts from exercising their customary common-law and equity jurisdiction merely because a patent is involved in the litigation. It is well settled that a state court may try questions of title, and may construe, enforce, or annul contracts relating to patents. Marsh v. Nichols, 140 U. S. 344, 11 S. Ct. 798, 35 L. Ed. 413; New Marshall Engine Co. v. Marshall Engine Co., 223 U. S. 473, 32 S. Ct. 238, 56 L. Ed. 513; Luckett v. Delpark, 270 U. S. 496, 46 S. Ct. 397, 70 L. Ed. 703; Binney v. Annan, 107 Mass. 94, 9 Am. Rep. 10; see also Wittemann Bros. v. Wittemann Co., 88 Misc. Rep. 266, 151 N. Y. S. 813; Hanson v. Hall Mfg. Co., 194 Iowa, 1213, 190 N. W. 967. This applies as well when a contract to assign is implied from the relationship of the parties as when it is express. Air Reduction Co. v. Walker, 118 Misc. Rep. 827, 195 N. Y. S. 120; Annin v. Wren, 44 Hun (N. Y.) 352, 353; Fuller & Johnson Mfg. Co. v. Bartlett, 68 Wis. 73, 31 N. W. 747, 60 Am. Rep. 838. In such cases, of course, the plaintiff asserts nothing which questions the validity of the defendant's patent.

In the case at bar, the plaintiff in the state suit charged that the defendant got from him the ideas which were embodied in the patent. This fact, if true, would mean that the patent issued to defendant was null and void. Kennedy v. Hazelton, 128 U. S. 667, 9 S. Ct. 202, 32 L. Ed. 576. Merely to get an idea from another is not a tort; the inventor may have freely communicated it. In that event the inventor has no recourse, except to an interference in the Patent Office, if the borrower files an application for a patent embodying his idea. But the idea may have been obtained under circumstances which forbid the borrower to make use of it for his own benefit. The complaint in the state suit alleged, and the court found, that Becher had agreed to keep secret and confidential such information as Oppenheimer gave him concerning his massaging instrument, and that, in violation of this agreement and of the confidential relationship between the parties, Becher embodied this information in his application for a patent. If the invention had been merely a trade secret, Oppenheimer could have enjoined Becher from using it for his own benefit, and could have compelled him to account for anything of value which he had obtained by wrongful use of it. Morison v. Moat, 9 Hare, 241; Du Pont de Nemours Powder Co. v. Masland, 244 U. S. 100, 37 S. Ct. 575, 61 L. Ed. 1016. This should be equally true when the secret is an invention.

The only question is whether the undoubted jurisdiction of the state court to compel a wrongdoer to account is divested because the incidental result will be to establish a fact between the parties which affects the validity of a patent. The exclusive jurisdiction of the federal courts in patent cases does not, we think, go so far. In Pratt v. Paris Gaslight & Coke Co., 168 U. S. 255, 259, 18 S. Ct. 62, 64 (42 L. Ed. 458), Mr. Justice Brown says:

"The action under consideration is not one arising under the patent right laws of the United States in any proper sense of the term. To constitute such a cause the plaintiff must set up some right, title or interest under the patent laws, or at least make it appear that some right or privilege will be defeated by one construction, or sustained by the opposite construction of these laws. * * * There is a clear distinction between a case and a question arising under the patent laws. The former arises when the plaintiff in his opening pleading—be it a bill, complaint, or declaration—sets up a right under the patent laws as ground for a recovery. Of such the state courts have no jurisdiction. The latter may appear in the plea or answer or in the testimony. The determination of such question is not beyond the competency of the state tribunals."

That case held that a state court is not ousted of jurisdiction by the fact that, incidentally to his defense, the defendant claims the invalidity of a certain patent. True, there the defendant set up the patent's invalidity, while here it appears on the face of the complaint, as it did in Middlebrook v. Broadbent, 47 N. Y. 443, 7 Am. Rep. 457. But it appears only incidentally and as an element of plaintiff's proof. Oppenheimer's complaint sets up no "right under the patent laws as ground for a recovery," to repeat Justice Brown's phrase. His cause of action is based on equitable principles applicable to any wrongful use of confidential information which the defendant had agreed to keep secret. It is true that a question of fact was decided, which determines the invalidity of Becher's patent as between the parties, and estops him upon that issue whenever it arises again between him and Oppenheimer. But, if the jurisdiction of state courts were limited by such incidental consequences, they would be unable to adjudicate all sorts of cases. For example, an action of replevin might involve the question whether the plaintiff had made a machine in defendant's possession. That machine might be a prior use of an invention which defendant had patented. Surely it cannot be that the state court would have no jurisdiction of the replevin suit, because the judgment therein would establish that the machine was of plaintiff's construction and so anticipated the patent. Yet the appellant must go so far to succeed in the case at bar.

The appellant has cited no authority which clearly sustains his position, and none has been found by independent research. In Cheatham Elec., etc., Co. v. Kentucky S. & S. Co., 213 Ky. 23, 280 S. W. 469, chiefly relied upon, plaintiff sought a declaratory judgment that certain patents owned by it gave it the right, denied by defendant, to make and sell certain articles. The petition was rightly dismissed for lack of jurisdiction because plaintiff was asserting rights under the patent laws. The defendant filed a counterclaim, which was somewhat comparable to Oppenheimer's suit, and this was dismissed because it necessarily followed the disposition of the original petition.

In Standard Scale, etc., Co. v. McDonald, 127 F. 709 (C. C. Mo.), also relied upon, the bill alleged that Orcutt invented a wagon scale while employed by defendants; that he applied for a patent upon said invention, and later learned that the defendants had previously applied and obtained a patent for said invention; that they were not the original inventors, and obtained their patent by fraudulent representations to the Patent Office, and in fraud of the rights of the first inventor, Orcutt, who had assigned his invention to the plaintiff. The relief sought was an injunction to restrain defendants from manufacturing under their patent, and an accounting. A demurrer was sustained to this bill, upon the ground that the issue of originality of invention was for determination in the interference in the Patent Office. This case differs from the case at bar, in that there is no allegation that the defendants had contracted with Orcutt to keep secret his invention, or that the relations of the parties were such that defendants committed a tort upon Orcutt in disclosing it to the Patent Office. It is true that the defendants are alleged to have obtained their patent by a fraud upon the Patent Office and "in fraud of the rights of" Orcutt, but his rights thus referred to were apparently merely the inchoate right which every inventor has to apply for and secure a patent. It was not a right sustained by acknowledged common-law or equitable principles, and no conduct of the defendants was

charged which amounted to a breach of contract or a tort. Judge Philips, in deciding the McDonald Case, relied upon Hoeltge v. Hoeller, Fed. Cas. No. 6574, which is similarly distinguishable from the case at bar.

On the other hand, in Murjahn v. Hall, 119 F. 186 (C. C. S. D. N. Y.), where the allegations are similar, but contain the additional statement that the defendant induced the plaintiff to disclose his invention by representing that the information would be kept secret, the bill of complaint was sustained against demurrer. Judge Townsend's opinion says (page 188) :

"Upon the facts submitted on demurrer in the case at bar, complainant had made an invention which he might legally keep secret, and thus secure the benefits to himself. Defendant obtained its disclosure by the representation that such disclosure would not deprive the complainant of the benefit of the invention, and that defendant would not disclose it to others, and would be a large purchaser of the paint; and, having learned it, he proceeded to use it to complainant's disadvantage and make large profits thereby. Upon those facts complainant should be entitled to an accounting and an injunction."

The basis of federal jurisdiction does not appear in the opinion. If it was diversity of citizenship, this decision would be an authority in favor of the jurisdiction of a state court. In commenting upon this case in the McDonald Case, Judge Philips remarked:

"The opinion of Judge Townsend, in the latter case, is quite brief. The conclusion of the court would seem to have been influenced by the consideration that the defendant had, by cunning and deceit, obtained the complainant's secret of invention, and that it inheres in the principles of equity jurisprudence to obstruct and prevent the enjoyment of the fruits of such fraud. It did not appear in that case, as in the one at bar, that the complainant had filed his application for a patent with the Commissioner of Patents, and that such application was pending before the Commissioner at the time of the issuance of the patent to the defendant."

In the case at bar, the bill of complaint does not allege that Oppenheimer had filed an application in the Patent Office, although that fact is brought in by Becher's answer. It is not, in our judgment, material. Oppenheimer is not asserting any right by reason of an application for a patent, nor any right under the patent laws. He is relying solely upon common-law and equitable principles to prevent a wrongdoer from profiting by the disclosure of information obtained under circumstances which bound him to keep it secret, and to account for such profit as he has made by wrongful use of the information. It may be that the relief prayed and granted goes too far. Becher has been ordered to assign a void patent. From Kennedy v. Hazelton, 128 U. S. 667, 9 S. Ct. 202, 32 L. Ed. 576, it appears that this should not have been ordered, because, as the court there points out, the only value which a void patent could have to the assignee would be to enable him to impose upon the public. But this goes merely to an error of law committed by the state court in its judgment, not to a lack of jurisdiction to render any judgment. On the court's finding that Becher had obtained knowledge of the invention under circumstances which bound him to keep it secret, Oppenheimer was entitled to an injunction against improper use by Becher of such knowledge. Authority, as well as principle, sustains the state court's jurisdiction to grant such relief. Smith & Egge Mfg. Co. v. Webster, 87 Conn. 74, 86 A. 763; Irving Iron Works v. Kerlow Steel Flooring Co., 96 N. J. Eq. 702, 126 A. 291. As to copyright, see Underhill v. Schenck, 238 N. Y. 7, 14, 143 N. E. 773, 33 A. L. R. 303; Hoyt v. Bates, 81 F. 641 (C. C. Mass.).

Appellant's attorney upon the argument invited us to dismiss the bill, if we concluded that the state court had jurisdiction. On the authority of Mast, Foos & Co. v. Stover Mfg. Co., 177 U. S. 485, 20 S. Ct. 708, 44 L. Ed. 856, we have power to do so. Accordingly the decree is affirmed, and the cause remanded, with directions to dismiss the bill of complaint.

MANTON, Circuit Judge (dissenting). Patent No. 1,634,316 was granted to appellant on July 5, 1927, on an application filed March 27, 1926, for a massage heating roller. The present suit is for infringement of this patent and for an injunction restraining the further prosecution of an equity suit in the New York state court between the parties. Appellant, prior to the filing of his application for this patent, made the device for the appellee Oppenheimer. Appellant alleges it was unsuccessful, and, although modified, did not succeed, and has been abandoned. After appellant filed his application for this patent, he furnished apparatus for the same to the appellee. Oppenheimer filed a later application for a pat-

ent in June, 1926. In August, 1927, the parties disagreed. Appellee Contoure Laboratories, Inc., incorporated by Oppenheimer, took over the latter's business. Oppenheimer filed an amendment to his application of June 26, 1927, and claimed appellant's patent, and asked for an interference between the parties.

But, before that interference was declared, appellee brought suit against the appellant in the Supreme Court of the state of New York. The complaint alleged that Oppenheimer disclosed the idea of the Becher patent to him, and that Becher fraudulently took out a patent in defiance of Oppenheimer's rights. The interference has never been prosecuted and is still pending. The present suit for infringement brings into question who is the first inventor, the claim being that the federal court only has exclusive jurisdiction of this issue. It is contended that the state court erroneously took jurisdiction and decided this question, which is one arising under the patent laws of the United States. Section 256, Judicial Code (28 USCA § 371).

The complaint in the state court did not claim an expressed contract whereby appellant was to apply his inventive skill to the use of the appellee, nor is it claimed that a contract exists by which the resulting invention of the appellant, made during such employment, must pass to the appellee. But the complaint in the state court stated "that defendant [present plaintiff] appropriated to his own use said ideas and said invention and the modification and improvements thereof, and in violation of his agreement [to keep Oppenheimer's ideas secret] made application to the Commissioner of Patents of the United States for letters patent."

It alleged a fraudulent use of Oppenheimer's ideas. The complaint did not allege that the plaintiff had agreed to assign his invention, but, on the contrary, says that he did not invent anything, and, if the appellees' theory is right, then the patent is void. Kennedy v. Hazelton, 128 U. S. 667, 9 S. Ct. 202, 32 L. Ed. 576. The issue in the state court was whether the patent obtained by plaintiff was a product of his own genius, while in the employ of the appellee, or whether it was a fraudulent use of Oppenheimer's idea. The solution of this question necessarily required a challenge to the validity of the patent obtained by the appellant. The issue was not whether a patent, concededly valid, is the product of appellant's genius, and, as such, should be assigned un-der an implied contract of assignment. The suit sounded in *tort* and not in *assumpsit*.

It may not be doubted now that the state courts are permitted to adjudicate suits which may incidentally involve the patent law, as in Luckett v. Delpark, 270 U. S. 496, 46 S. Ct. 397, 70 L. Ed. 703, in which case it was pointed out that the complainant did not, by its bill in the state court, raise any question as to the validity or construction of the patent, nor did it make any claim for damages for infringement. That suit was an ordinary bill for specific performance to complete the assignment to complainant for an improvement of a patent, in compliance with his covenant for further assurance and it was held that the defendant there held the legal title as trustee for the complainant, and that the state court had jurisdiction to pass upon the ownership. That case did not arise under the patent law. The main and declared purpose was to enforce the rights of the plaintiff under contract with the defendants for royalties, and the reconveyance of one patent. The issues there were whether the assignee of a patent was performing his contractual duties, the patent being concededly the assignor's, while in the case at bar the issue was whether the appellant made his own discovery or fraudulently used Oppenheimer's.

At bar there is no contract of assignment whatever upon which a state court could permissibly adjudicate the question of who is the first inventor, and a mere reading of the decision and findings in the state court point out clearly that the basis of decision was a determination by the trial judge that Oppenheimer's was the first conception, and that appellant took his ideas in applying for the patent. It is not intimated that the appellant was to apply for the patent in Oppenheimer's behalf. Appellant's claim was that the idea of the patent was his own knowledge. The state trial court in decision merely held that Oppenheimer made certain discoveries, and not the appellant, and therefore they were not of the appellant's discovery. It is the same issue that is presented in the interference proceeding. Congress long ago determined to leave that to the Patent Office. New Marshall Engine Co. v. Marshall Engine Co., 223 U. S. 473, 32 S. Ct. 238, 56 L. Ed. 513; Excelsior Wooden Pipe Co. v. Pacific Bridge Co., 185 U. S. 282, 22 S. Ct. 681, 46 L. Ed. 910; St. Paul Plow Works v. Starling, 127 U. S. 376, 8 S. Ct. 1327, 32 L. Ed. 251.

In Pratt v. Paris Gaslight & Coke Co.,

168 U. S. 255, 18 S. Ct. 62, 42 L. Ed. 458, the plaintiff sued in the state court to recover a sum of money for the manufacture and installation of a water gas device. The defendant pleaded that the plaintiff had guaranteed to save him harmless and defend him in any suit brought by third parties for patent infringement; that the patent laws under which the plaintiff made the apparatus were void, and an infringement of the patent of another company which had sued the defendant for infringement; that the plaintiff had not defended the suit, and that the defendant had thus been compelled to cease using the apparatus. At the trial, the defendant introduced evidence tending to show defendant's patent infringed that of the other company, in support of the allegations of its defense, and the Supreme Court said:

"The action, however, was not brought to test the validity of plaintiff's patents, to recover damage for their infringement, or to enjoin their use by the defendant. The suit was an ordinary action of assumpsit upon the common counts for the price of a machine—a patented machine it is true, but none the less subject to a common law action to recover its value."

The question of the validity of the patent was raised collaterally in the state court, but at bar it is in direct litigation between the alleged patentee and the infringer, and the issue of validity of the patent was squarely raised by the appellee in the state court, when he took the position that the appellant was not the discoverer of the device for which he had obtained a patent. Therefore cases like Wade v. Lawder, 165 U. S. 624, 17 S. Ct. 425, 41 L. Ed. 851; Dale Tile Mfg. Co. v. Hyatt, 125 U. S. 46, 8 S. Ct. 756, 31 L. Ed. 683; By-Products Recovery Co. v. Mabee (D. C.) 288 F. 401; Underhill v. Schenck, 238 N. Y. 7, 143 N. E. 773, 33 A. L R. 303; and Wittemann Bros. v. Wittemann Co., 88 Misc. Rep. 266, 151 N. Y. S. 813, which hold merely that the state court has jurisdiction to determine the question of whether a contract for assignment of a defendant's interest in a pending or existing patent has been breached, are not in point. In Craig, etc., Corp. v. Static Control Co. (C. C. A.) 295 F. 72, this court had before it a claim of a plaintiff who alleged an assignment of the defendant's patent to him, whereby he became the sole owner of the invention and any improvements thereon. The bill alleged that the defendants thereafter established defendant corporation and manufactured articles infringing the plaintiff's patent. The defendant said the articles were

manufactured under the separate patent issued to him. The plaintiff at the trial sought to prove that an officer of the plaintiff was the inventor of the second patent, and not the defendant. This court held that the defendant's device did not infringe, but upon the claim that the plaintiff's officer was the inventor, and not the defendant, this court, after a review of the provisions of the statute, said:

"It is thus apparent that any priority controversy except one arising under sections 4915 and 4918 [which is not material in the instant case] of the Revised Statutes is to be considered a finality in any subsequent infringement litigation where the patent in suit is not a patent granted on the invention which was involved in said priority controversy in the Patent Office. Until the applicant has exhausted his rights through the tribunals of the Patent Office, he may not raise the question here sought to be raised in the district court."

This would have the same application in the state court. Affirming the District Court, we said:

"The exclusive remedy of the appellant for testing the priority of invention is with that tribunal [Patent Office] except in a direct suit by the Smith patentee for infringement, where the validity of his patent, including the questions of originality and date of invention, might be litigated."

And further, as to the third cause of action, it was alleged that it was based upon a contract of assignment, and we held it did not raise a question as to "patentability, title, scope, or monopoly of any patent," and that it was a matter for the state court to decide, since there was no diversity of citizenship.

The application of the authoritative holdings to the facts of the present suit support the maintenance of this suit in the District Court, and we should hold that the state court was without jurisdiction, because the suit there was based upon the application of the patent laws of the United States. Cheatham Electric Switching Device Co. v. Ky. Switch & Signal Co., 213 Ky. 23, 280 S. W. 469.

A preliminary injunction should be granted. This court has held that, where there is no proof of long-continued acquiescence by the public as would raise a prima facie case in the patentee's favor, it is the practice to refuse a preliminary injunction. Simson Bros., Inc., v. Blancard & Co., Inc. (C. C. A.) 22 F.(2d) 498; Hildreth v. Norton (C. C. A.) 159 F. 426. However, it does appear

that, by reason of an improper assumption of jurisdiction in the state court, the appellant, who has the presumption of validity of the patent in his favor, is being deprived of the rights thus accorded him by reason of the result in the state court. Infringement by the defendant continues, and moreover assumption of the title, by reason of the state court decision, places appellees in control of the manufacturing of the device. Appellant should have equitable relief under these circumstances, and an injunction should be granted against further infringement until a trial may be had of the issue presented as to who was the first inventor. An injunction restraining proceedings on the state court decree may be granted under the general equity powers of the District Court. Simon v. So. Ry. Co., 236 U. S. 115, 35 S. Ct. 255, 59 L. Ed. 492.

For the reasons stated, I dissent.